132 N.J. Super. 542 (1974)
334 A.2d 370
FRANK CAPASSO, T/A CAPASSO BROS. AND ROBERT LAUDATI, PLAINTIFFS,
v.
L. PUCILLO AND SONS, INC., AND THE TOWN OF BELLEVILLE, DEFENDANTS. RICHARD W. DILL AND JAMES PETROZELLO COMPANY, INC., A NEW JERSEY CORPORATION, PLAINTIFFS,
v.
TOWN OF BELLEVILLE AND THE BOARD OF COMMISSIONERS OF TOWN OF BELLEVILLE, AND L. PUCILLO & SONS, INC., DEFENDANTS.
Superior Court of New Jersey, Chancery and Law Divisions.
Decided January 2, 1974.
*544 Mr. Richard C. Cooper and Mr. Reginald Jennings for plaintiffs Frank Capasso and Robert Laudati (Messrs. McCarter & English, attorneys).
Mr. Mark D. Larner for defendant L. Pucillo & Sons, Inc. (Messrs. Budd, Larner, Kent, Gross & Picillo, attorneys).
Mr. David Samson for plaintiffs Richard W. Dill and James Petrozello Company, Inc. (Messrs. Lieb, Wolff & Samson, attorneys).
Mr. John R. Scott for defendant Town of Belleville.
KIMMELMAN, J.S.C.
This case poses a somewhat unique problem of statutory construction involving the interplay between the public bidding statutes and the jurisdiction of the Public Utilities Commission over certain public utilities. *545 This formal written opinion follows up on an oral opinion delivered because of the rather urgent necessity for a determination by this court so that the parties would know where they stood  not only as to the Town of Belleville but other municipalities as well now faced with a similar problem. The oral opinion would also enable any party feeling aggrieved to promptly lodge an appeal, so that a more definitive ruling might be obtained with some dispatch.
The facts are not disputed. It appears that in 1970 L. Pucillo & Sons (Pucillo), a scavenger, garbage collector and disposer of refuse, entered into a contract with codefendant Town of Belleville as a result of public bidding for the purpose of servicing residents of the town for the collecting and disposing of their garbage. The contract was to run for three years, 1971 through 1973. In anticipation of the expiration date the Town of Belleville on October 23, 1973 adopted a resolution authorizing the town clerk to advertise for proposals for the supplying of scavenger service for the Town, to commence January 1, 1974, under certain terms and specifications which were set forth in instructions to the bidders. The proposals were to be received and opened by the governing body on November 27, 1973 at 8:30 p.m. Apparently several prospective bidders obtained copies of the specifications and prepared for submission what they considered to be the necessary bids.
On November 27, 1973, at the meeting of the governing body  in this instance the board of commissioners  the mayor announced that the bids would not be received and that the bidding procedure would be dispensed with because the town had entered into a contract with Pucillo for supplying the scavenger services for a two-year period  that is, the years 1974 and 1975  at the same rate as charged by Pucillo in the prior contract entered into as the result of public bidding some three years earlier.
Representatives of plaintiff James Petrozello Company were in attendance at the meeting of November 27, 1973, as were representatives of plaintiff Capasso Bros., both scavenger *546 companies, who had prepared bids and had them ready for submission. Their attendance was obviously a futile exercise.
On that same evening the board of commissioners of Belleville, pursuant to the mayor's announcement, adopted a resolution awarding the scavenger service contract to Pucillo, indicating that it was reached as the result of a negotiated agreement and that the contract was to be executed for the next two-year period without any increase in the cost theretofor charged the municipality by Pucillo.
By reason of the foregoing a proceeding in lieu of prerogative writs was instituted in the Law Division by Richard Dill and James Petrozello Company, contesting the award of the contract without public bidding. In addition, a Chancery Division action was started by Capasso Bros. and Robert Laudati, a local taxpayer, seeking to enjoin the operation of Pucillo scheduled to commence on January 1, 1974 under the new contract.
In view of the exigency of the situation and by agreement among counsel the matters were set down for final hearing this first court day of the new year.
Preliminarily, certain jurisdictional objections must be disposed of. In my view plaintiffs have sufficient standing to bring this action. There is no question with respect to the standing of taxpayer Laudati. It is assumed that Dill is also a taxpayer: he falls into the same category. And there is no question with respect to the standing of the two disappointed bidders, Capasso Bros. and James Petrozello Company. I do not know whether their bids would have been lower than the price to be charged by Pucillo. In affidavits supplied on behalf of both Capasso and Petrozello it is indicated that their bids would result in a lower cost to the town. In any event, the fact that they were potential bidders and their ability to bid was thwarted by the action of the board of commissioners in entering into a contract as a result of private negotiations gives them standing to contest the action.
*547 Reference is made to the case of Band's Refuse Removal, Inc. v. Fair Lawn, 62 N.J. Super. 522, 539 (App. Div. 1960). That case does not directly hold that potential bidders have standing, but by inference from the language of Judge Goldmann it appears that a bidder or potential bidder would have standing because such a person would not be a total stranger to the contractual arrangements being contemplated by the municipality.
Likewise, I do not believe that the Public Utilities Commission has jurisdiction in this matter because there is not here presented a dispute involving the Commission, or rates set or franchise areas specified by the Commission, or involving its jurisdiction. Rather, there is here a dispute simply involving the capacity of a municipality to enter into a contractual arrangement for garbage collecting services without the necessity of public bidding.
As a general proposition it is required in this State that every contract or agreement for the performance of any work or for the furnishing or hiring of materials or supplies, the cost or the contract price whereof is to be paid with or out of public funds and which will be for a sum exceeding in the aggregate $2500, shall be made or awarded only after public advertising for bids. The authority therefor is found in N.J.S.A. 40A:11-4. That section is an outgrowth of a pre-existing statute, N.J.S.A. 40:50-1, which contained, insofar as its operative features were concerned, substantially similar language. N.J.S.A. 40:50-1 was superseded and thereby repealed as a result of the enactment of the Local Public Contracts Law, N.J.S.A. 40A:11-1 et seq. (L. 1971, c. 198).
These bidding statutes, both the previous repealed section and the currently operative section, each contain a pertinent exception dispensing with public bidding where the supplying of any product or the rendering of any services to a municipality is to be performed by a public utility which is subject to the jurisdiction of the Board of Public Utilities Commissioners "in accordance with tariffs and schedules of *548 charges made, charged or exacted, filed with said board." See N.J.S.A. 40A:11-5(1) (h).
In 1970, when Pucillo entered into the original contract with the Town of Belleville as the result of public bidding, Pucillo was not a public utility. At that time there was operative N.J.S.A. 40:66-4 specifically dealing with street cleaning and refuse disposal services supplied to a municipality. That section generally provides as follows:
The governing body may, if it deem it more advantageous, contract with any person for the cleaning of the streets, or the collection, removal and disposal of ashes, garbage, refuse and waste matter or any portion thereof. Before making any such contract or contracts the governing body shall first adopt specifications for the doing of the work in a sanitary and inoffensive manner, and any such contract or contracts the amount of which exceeds $2,500.00 shall be entered into and made only after bids shall have been advertised therefor, and awarded in the manner provided in chapter 50 of this Title (§ 40:50-1 et seq.) * * *
Obviously, in 1970 with respect to the original Pucillo contract, the Town of Belleville followed N.J.S.A. 40:66-4. With the enactment of the Solid Waste Utility Control Act of 1970 (L. 1970, c. 40), effective December 6, 1970, companies engaged in solid waste collection and solid waste disposal were for the first time added to the definition of companies considered public utilities and were placed under the general supervision, regulations, jurisdiction and control of the Board of Public Utility Commissioners. N.J.S.A. 48:2-13.
It is argued, therefore, that as a result of this amendment to the general public utility laws Pucillo (or any other scavenger for that matter), now considered a public utility, need no longer adhere to the public bidding procedure before it may enter into a contractual relationship with a municipality. The argument is made in reliance upon the public utility exception contained in N.J.S.A. 40A:11-5(1) (h), supra, and in the face of N.J.S.A. 40:66-4, supra, which remains unrepealed. The latter section, as I have previously *549 indicated, requires municipalities to resort to public bidding before entering into a garbage disposal contract.
The question for decision, then, is whether the recent amendments to the general public utility laws giving the status of public utilities to scavengers, when taken in conjunction with the public bidding exemption for public utilities, has impliedly repealed N.J.S.A. 40:66-4 or in some way made it inapplicable.
As acknowledged by counsel and as is the general proposition of law, implied repealers are not favored. A subsequent enactment must be clearly repugnant to a prior enactment and must be designed to be a substitute for the former in order to rebut the presumption against implied repealers. A court is required, if at all possible, to construe applicable statutory provisions with a view to giving those provisions a harmonious meaning.
If, upon a reasonable construction, a pre-existing statute cannot stand under any reasonable interpretation in the light of the later enactment, then it must be found that the Legislature has impliedly repealed that previous inconsistent section. Loboda v. Clark Tp., 40 N.J. 424 (1963).
In deciding that issue, and in construing the various statutory provisions referred to, the court must bear in mind the legislative purpose and the very strong public policy behind the public bidding statutes.
As stated by the Appellate Division in Young v. West Orange Redevelopment Agency, 125 N.J. Super. 440, 443 (App. Div. 1973), which is the latest expression of our courts on the subject, the legislative policy behind the local public contracts law, N.J.S.A. 40A:11-1 et seq., is identical with its predecessor, N.J.S.A. 40:50-1 et seq.
The purpose of public bidding is to benefit the taxpayers by securing competition and by guarding against favoritism, improvidence, extravagance and corruption.
What is meant by the phrase "to benefit the taxpayers" plainly is that the lowest competitive price from a responsible bidder is to be secured. The contract price obviously *550 is paid by the taxpayers; therefore, the least they have to pay benefits them. At the same time the competition to be derived from public bidding will guard against favoritism, improvidence, extravagance and corruption.
There are, of course, exceptions to the bidding statutes. The exceptions are generally grounded in situations where public bidding would be meaningless or impractical. It was always the law that public bidding was dispensed with where the municipality or other governmental unit was contracting for professional services, whether medical, legal or otherwise. Professional services are not to be secured by public bidding because there is something inherent in the process which would nullify or detract from the professional quality of the services being sought.
N.J.S.A. 40A:11-5 enumerates other exceptions, such as the purchase of perishable foods. It may not be practical to secure bids where perishable foodstuffs are involved. Also, it may not be practical to secure public bids where an emergency is involved. And, as set forth in the predecessor statute, N.J.S.A. 40:50-1, and the current Local Public Contracts Law, it is not practical to secure public bidding where the services of a regulated public utility are involved.
Why this last exception? The reason the statutory scheme dispenses with public bidding where a public utility is involved is because the legislative purpose behind public bidding  that is, to obtain a benefit for the taxpayers by securing competition and guarding against favoritism, improvidence, extravagance and corruption  becomes an impractical objective. Requiring regulated public utilities to submit bids does not advance the statutory design. In the popular sense, a public utility usually has a definite and fixed franchise area. In the popular sense, a public utility has a monopoly. In the popular sense, a consumer of the services or goods rendered by a public utility has no choice but to go to that particular company servicing his particular area.
Because it is necessary and desirable in our society that there be certain services rendered on a continuous basis without *551 cutthroat competition, we have the notion of public utilities. In order to guard against abuses by the publicly sanctioned monopoly it is required that the rates to be charged by the public utility be regulated. That is the protection afforded to the public. Similarly, that is the same kind of protecion which the general bidding statutes seek to achieve for the taxpaying public.
The Legislature had in mind that it would be impractical if not impossible, as a general proposition, to require a public utility to bid for services a municipality needed.
There is only one telephone company servicing Essex County, for example. It would be impractical to require a bid for the installation of telephones in the court house complex. There is only one gas company supplying Essex County wtih gas. It would, therefore, be impractical to require public bidding because only the Public Service Electric & Gas Company could bid and the price to be charged would have no reference to the competitive market. The price to be charged would be in accordance with a schedule of rates and tariffs already on file with he Public Utilities Commission.
From the foregoing it is evident that what the Legislature had reference to when it sanctioned an exception to the public bidding laws in the case of public utilities was that the benefits to be secured from public bidding  that is, the lowest possible cost and the avoidance of favoritism, corruption and extravagance  were already met and obtained by the jurisdiction and control of the Public Utilities Commission over the public utilities.
The question now becomes whether those benefits to be derived from public bidding are amply safeguarded by contracting with that category of public utilities generally referred to as scavengers. Did the Legislature have in mind also exempting from public bidding those public utilities which do not have exclusive franchise areas or monopolies and which do not already have set forth on file with the Public *552 Utilities Commission a schedule of rates and tariffs to be charged?
I think it is important to make reference to N.J.S.A. 40A:11-38. That section sets forth all the provisions of Title 40 which are repealed as a result of the Local Public Contracts Law enacted in 1971. There is omitted from those sections repealed reference to N.J.S.A. 40:66-4 which would require public bidding in the case of scavengers and garbage collecting and disposal companies. True, N.J.S.A. 40:66-4 was enacted at a time when scavengers and garbage collecting companies were not legally defined as public utilities. But we must face up to the fact that the Legislature did allow that section to remain on the books when, at its last session, it included scavengers and garbage collecting companies as public utilities.
Is there any rational reason why the Legislature allowed this section to remain in force, or was there a legislative slip-up and mistake? If there was a legislative slip-up or error committed, then I must rule that N.J.S.A. 40:66-4 has been superseded and nullified. If there was no mistake committed, then I have to determine whether the two statutes can be harmonized. I believe they can be, and therefore must rule that there was no legislative mistake made.
The two can be harmonized by resort to the purposes behind public bidding. As emphasized several times now, public bidding is to secure a benefit to the taxpayers by fostering competition and guarding against favoritism, improvidence, extravagance and corruption.
In the instance of local scavengers and garbage disposal companies there is at present no such device as exclusive franchise territories. There is still no notion of a publicly sanctioned monopoly. There are no fixed rates or tariffs on file with the Public Utilities Commission.
There may come a time when scavengers and garbage collecting companies will have monopolies as the result of fixed franchise areas. One would assume that when that time comes their rates will also be fixed and subject to prior *553 public scrutiny before being charged. However, the Public Utilities Commission has not yet exercised that degree of jurisdiction. When it does exercise such jurisdiction and control then and in such event public bidding will become an idle gesture and resort to the provisions of N.J.S.A. 40:66-4 will no longer be necessary. The crucial element missing here is a filed schedule of rates and tariffs to be charged. See N.J.S.A. 40A:11-5(1) (h). In my view, until such time as that becomes a requirement the provisions of N.J.S.A. 40:66-4 must be adhered to.
Obviously, the very simplistic argument that because scavengers and garbage collecting companies are public utilities they must be exempted does not provide the solution to this case. Unregulated public utilities that have not filed tariffs offer to the public none of the salutory benefits to be derived from public bidding. Accordingly, the court has no difficulty in harmonizing the statutes here involved.
For the reasons expressed, I conclude that the award of the contract by the Commissioners of the Town of Belleville to L. Pucillo & Sons on November 27, 1973 will be set aside as contrary to the provisions of the Local Public Contracts Law and N.J.S.A. 40:66-4.