659 A.2d 537

ROY BAYLINSON, PLAINTIFF, v. BOARD OF COMMISSIONERS
OF THE HOUSING AUTHORITY OF THE CITY OF
ATLANTIC CITY, DEFENDANT.

Superior Court of New Jersey
Law Division Atlantic County

Decided February 24, 1995.

*Roy Baylinson,* plaintiff, *pro se.*

*Joan H. Langer,* for defendant (*Joseph M. Jacobs,* attorneys).

## OPINION

WINKELSTEIN, J.S.C.

Plaintiff, an attorney, has filed a complaint in lieu of prerogative writ against defendant, a Public Housing Authority (the Authority), created by the City of Atlantic City pursuant to *N.J.S.A.* 55:14A–1 to –58.[1]

In 1994, the Authority sought proposals for legal services. Plaintiff submitted a proposal but was not awarded the contract. Instead, the Authority decided to readvertise and seek additional proposals. The case first came before the court on February 3, 1995, at which time plaintiff asked the court to enjoin the Authority from awarding a contract to anyone else pending a decision as to whether plaintiff should have been awarded the contract based on his original proposal. For purposes not related to the issue now before the court, the request for injunctive relief was denied. At oral argument, however, it was brought to the court's attention that the Authority's new specifications included a proposed contract term of two years. Plaintiff objected to the two year term arguing that it is contrary to *N.J.S.A.* 40A:11–15 which provides that a contract for professional services may not exceed twelve consecutive months.[2] Defendant argues that since federal regulations governing housing authorities, and the Authority's contract with the U.S. Department of Housing and Urban Development (HUD) do not limit professional service contracts to one year, the Authority is permitted to engage an attorney for a two year term.

---

[1] Repealed by L.1992, c. 79, § 59. *See N.J.S.A.* 40A:12A–1 to –49.

[2] As a citizen and taxpayer, plaintiff has standing to raise the question of illegality of the specifications. *Waszen v. City of Atlantic City,* 1 *N.J.* 272, 276, 63 A.2d 255 (1949).

■ In procuring contracts, the Authority is governed by the procurement procedures established in the Code of Federal Regulations.

*Procurement standards.* (1) Grantees and subgrantees will use their own procurement procedures which reflect applicable State and local laws and regulations, provided that the procurements conform to applicable Federal law and the standards identified in this section.

[24 *C.F.R.* § 85.36(b).]

The Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –49, provides that all contracts for the performance of work or services must be advertised for and awarded to the lowest responsible bidder. *N.J.S.A.* 40A:11–4 to –5 lists exceptions. Among the exceptions is a contract for "professional services." *N.J.S.A.* 40A:11–5(1)(a)(i). Professional services are defined as:

[S]ervices rendered or performed by a person authorized by law to practice a recognized profession, whose practice is regulated by law, and the performance of which services requires knowledge of an advanced type in a field of learning acquired by a prolonged formal course of specialized instruction and study as distinguished from general academic instruction or apprenticeship and training. Professional services may also mean services rendered in the performance of work that is original and creative in character in a recognized field of artistic endeavor.

[*N.J.S.A.* 40A:11–2(6).]

■■ The essence of a professional service is that it involves "specialized knowledge, labor or skills and the labor or skill is predominately mental or intellectual, rather than physical or manual." *Atlantic Mut. Ins. Co. v. Continental Nat'l Amer. Ins. Co.,* 123 *N.J.Super.* 241, 246, 302 *A.*2d 177 (Law Div.1973). Whether such services be medical, legal or otherwise, professional services are not to be secured by public bidding because there is something inherent in the process which would nullify or detract from the professional quality of the services being sought. *Capasso v. Pucillo,* 132 *N.J.Super.* 542, 334 *A.*2d 370 (Ch. & Law Divs.), *aff'd,* 132 *N.J.Super.* 473, 334 *A.*2d 334 (App.Div.1974). Contracts for legal services are included as professional service contracts, and public bidding is not necessary. *Id.* at 550, 334 *A.*2d 370.

All contracts, whether procured by bid or otherwise, are limited in term to twelve consecutive months unless otherwise stated.

*N.J.S.A.* 40A:11–15.  No exception to the twelve month restriction exists for professional legal services.

■   The sole issue to be determined therefore is whether the state statute which limits the term of the contract to one year is preempted by federal regulations or public policy as expressed in the contract between the Authority and HUD.  This is a case of first impression.[3]

■   The preemption doctrine, rooted in the second clause of Article VI of the United States Constitution, requires that when the mandates of federal law and state law are not consistent, state law must yield.  *Feldman v. Lederle Lab.,* 125 *N.J.* 117, 133, 592 *A.*2d 1176 (1991).  Federal regulations have the same preemptive effect as federal statutes.  *Id.* at 134, 592 *A.*2d 1176.

> Preemption may occur in several ways.  Provided Congress or the federal agency is acting within the scope of its authority, express language may exclude state law....  In the absence of a clear expression, the intent to preempt all state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress "left no room" for supplementary state regulation....  Where the object sought to be obtained by federal law and the character of obligations imposed by it may reveal the same purpose, the intent to preempt state law will be inferred.  [Another] situation in which preemption will be implied occurs when the Act of Congress may touch a field in which the federal interest is so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.
>
> [*Ibid.* (citations omitted).]

■   The preemption doctrine is applicable where "(1) there exists clear evidence that Congress intended to preempt the field; (2) the nature of the subject matter demands exclusive federal uniform regulation;  (3) there is an actual conflict between two statutory schemes;  and (4) the state law stands as an obstacle to the accomplishment and execution of the federal objectives and purposes."  *Hill Manor Apts. v. Brome,* 164 *N.J.Super.* 295, 302, 395 *A.*2d 1307 (Essex County Ct.1978).  Nevertheless, the mere

---

[3] This opinion represents a comprehensive explanation of the court's findings from the bench on February 24, 1995.

potential for conflict constitutes insufficient justification to support a finding of preemption. *Ibid.*

■ The initiation point of the preemption analysis depends on the area of law involved. *Feldman, supra,* 125 *N.J.* at 137. For example, areas such as health and safety have traditionally been regulated by the states. *Hillsborough County v. Automated Med. Lab., Inc.,* 471 *U.S.* 707, 105 *S.Ct.* 2371, 85 *L.Ed.*2d 714 (1985). However, even if Congress has not occupied a particular field, preemption may occur to the extent that state and federal law actually conflict. *Vail v. Pan American Corp.,* 260 *N.J.Super.* 292, 297, 616 *A.*2d 523 (App.Div.1992). Conflict preemption occurs when compliance with both federal and state regulations is a physical impossibility, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *Feldman, supra,* 125 *N.J.* at 135.

These principles compel a finding that state law limiting the term of a professional services contract to one year is not preempted by federal regulation or policy which allow contracts to exceed a one year term. As noted, housing authorities are governed by state and local laws as long as the law conforms to federal law and standards. 24 *C.F.R.* § 85.36(b). There is nothing in the contract between the Authority and HUD or the underlying regulations which prohibit a state from limiting the term of a professional services contract to one year.

Professional services contracts are discussed in the HUD procurement handbook for public housing agencies (PHAs). 7460.8 REV–1, January 1993, at 4–29. It states:

> The [Housing Authority] **shall** submit for HUD review and approval any agreement or contract for professional, management, fee accountants, legal or other professional services with any person or firm where the total period or term of the contract, including any renewal or option provisions is in excess of two (2) years. (See Section 315 of the Terms and Conditions Constituting Part Two of a Consolidated Annual Contributions Contract (ACC)).

Section 315 of its aforementioned contract provides:

Sec. 315. Contracts for Personal Services

> The Local Authority shall not enter into, execute or approve, any agreement or contract for personal, management, legal or other services with any person or firm where the initial period or term of the contract is in excess of two (2) years, or where the contract contains a renewal provision for any period of time, without the prior written consent of the Government. Where an existing contract contains a renewal provision, automatic or otherwise, which extends the terms of the contract for any period, the Local Authority shall not act to renew or extend such contract, or fail to take any necessary action to forestall automatic renewal or extension, without the prior written approval of the Government.

It is clear from a review of these provisions that no actual conflict in the law exists. A one year contract for professional services satisfies both the federal and state regulations. Compliance with both federal and state law is not a physical impossibility. If, for example, there existed a federal law which mandated that the duration for all professional services contracts must be two years, the federal law would preempt a state law which required that such contracts must not be in excess of one year. The difference between this example and the instant case, however, is that in the former, mutual compliance would be an impossibility, while in this case it is not. The courts have declined to preempt state law causes of action solely because they impose liability over and above that authorized by federal law, since mutual compliance is feasible. *English v. General Elec. Co.*, 496 *U.S.* 72, 89, 110 *S.Ct.* 2270, 2280, 110 *L.Ed.*2d 65 (1990); *Miller v. Northwest Airlines*, 253 *N.J.Super.* 618, 602 *A.*2d 785 (App.Div.1992).

*N.J.S.A.* 40A:11–15 does not stand as an obstacle to the accomplishment of the federal objectives and purposes. In fact, state law limiting a contract term to one year would further the goals of the federal law by providing even stricter standards for such contracts, while still providing HUD with appropriate oversight.

The court therefore finds that federal law and the controlling state statutes are not incompatible. There is no evidence that Congress intended to preempt the field nor that the subject matter demands exclusive federal uniform regulation. The statutory schemes are consistent and without conflict. There is no basis for preemption. The Authority's proposals for professional services must therefore comply with *N.J.S.A.* 40A:11–15. The

proposed two year term is contrary to statute and is stricken. The contract may not be awarded for a period in excess of one year.