William D. WEST, Plaintiff–Appellant,

v.

NORTHWEST AIRLINES, INC., Defendant–Appellee.

No. 89–35820.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1990.

Decided Sept. 11, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc Feb. 5, 1991.

Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, D.C., for plaintiff-appellant.

Jon Metropoulos, Browning, Kaleczyc, Berry & Hoven, Helena, Mont., for defendant-appellee.

Before HUG, D.W. NELSON and BRUNETTI, Circuit Judges.

D.W. NELSON, Circuit Judge:

Plaintiff-appellant, William D. West (West) purchased a ticket to travel on Northwest Airlines, Inc., (Northwest) from Great Falls, Montana to Arlington, Virginia. Northwest overbooked West's flight and refused to allow West to board the plane. West brought this action against Northwest for breach of the covenant of good faith and fair dealing under Montana law. The district court granted summary judgment for Northwest on the ground that West's claim was preempted by the Federal Aviation Act. We affirm in part and reverse and remand in part to the district court to determine if West has a meritorious claim for compensatory damages under Montana law.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 1986, William D. West purchased a non-refundable, non-changeable ticket to travel on Northwest from Great Falls, Montana to Arlington, Virginia. His flight was scheduled to depart Great Falls at 1:30 p.m. and to arrive in Arlington at 9:00 p.m. on October 7, 1986. West confirmed his scheduled departure with his travel agent on October 6, 1986.

Between the date of purchase and the scheduled departure date, Northwest decided to reduce the size of its aircraft from a Boeing 727, which carries 146 passengers, to a DC 9 aircraft, which carries 78 passengers. Northwest did not inform West or any of Northwest's sales agents of its decision.

When West arrived at the check-in gate, a Northwest employee informed him the flight was overbooked. Northwest attempted to make room for West and other passengers by requesting volunteers to deplane in exchange for certain payments. However, only three people accepted, and West could not obtain a seat on this flight.

Northwest then offered West an alternative flight that would arrive at Dulles Airport, which is near West's destination, at 3:00 a.m. the next morning. West declined this alternative flight because of its inconvenience and rescheduled his flight to Arlington for approximately two weeks later.

West subsequently filed claims in state court for breach of the covenant of good

faith and fair dealing under Montana law and for unjust discrimination under section 404(b) of the Federal Aviation Act (FAA), seeking both compensatory and punitive damages. Northwest successfully petitioned the United States District Court to remove the case to the federal court on the basis of diversity of citizenship.

Northwest then moved for summary judgment on the grounds that the period for bringing a claim under Section 404(b), upon which West based his federal claim, had expired and that West's state claim was preempted by the FAA. On September 28, 1989, the district court granted Northwest's motion for summary judgment on both of the above grounds. West timely appealed only the issue of whether the district court erred in dismissing West's state law claim on the ground that it was preempted by the FAA.

## DISCUSSION

### I. Standard of Review

A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there existed any genuine issue of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

### II. Federal Preemption

■ Northwest argues that the federal government's role in regulating the air transportation industry under the FAA preempts Montana's common law duty to deal fairly and in good faith. In examining this issue, we note that when Congress legislates in a field traditionally occupied by the states, such as common law tort and contract remedies in business relationships, there is a presumption against finding preemption of state law. *See California v. ARC America Corp*, 490 U.S. 93, 100–01, 109 S.Ct. 1661, 1665, 104 L.Ed.2d 86 (1989).

There are three ways in which preemption may occur. "Congress may preempt state law expressly by so stating in explicit terms on the face of the statute." *Motor Vehicle Mfrs. Ass'n v. Abrams*, 899 F.2d 1315, 1318 (2nd Cir.1990) (internal quotations omitted). Second, "when Congress intends that federal law occupy a given field, state law in that field is pre-empted." *ARC America Corp*, 109 S.Ct. at 1665. Finally, even if Congress has not occupied the field, "state law is nevertheless preempted to the extent it actually conflicts with federal law, that is, when compliance with both state and federal law is impossible." *Id.*

### A. Explicit Preemption

■ The district court found that Congress in the FAA expressly preempted West's state law claims. Specifically the court held that in section 1305(a)(1), "Congress intended to preempt all state statutes and common law rules which affect rates or services involving air travel." We disagree, finding that Congress did not expressly preempt West's state law claim.

Section 1305(a)(1) of the FAA provides that no state "shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law *relating to rates, routes, or services* of any air carrier." 49 U.S.C.App. § 1305(a)(1) (App.Supp. V 1987) (emphasis added).

Appellant asserts first that section 1305 does not apply because "services" does not include airline boarding practices but is limited in meaning to a description of the types of operations which airlines offer, such as scheduled passenger service, scheduled cargo service, mail service and other specialized services. Thus, under West's reading, section 1305 would preempt state law only when the state law affected the types of services offered. We reject this interpretation.

"The primary rule of statutory construction is to ascertain and give effect to the plain meaning of the language used." *Hughes Air Corp. v. Public Utilities Com'n*, 644 F.2d 1334, 1337 (9th Cir.1981); *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981). In this case, we believe that the plain meaning of

"services" clearly includes services provided to customers such as the boarding services at issue here. If Congress had intended to limit the word "services" to something other than its common usage, it could easily have used the words "types of services" rather than "services".

Moreover, the Ninth Circuit has already rejected West's definition of services in *Hingson v. Pacific Southwest Airlines*, 743 F.2d 1408, 1415 (9th Cir.1984). In *Hingson* the court held that regulation of air carrier seating policies involved regulation of services within the meaning of section 1305(a)(1). *Id.* Thus, the court did not define "services" as merely types of services such as cargo or air ambulance but defined it to include services to customers. Following *Hingson*, we find that Northwest's passenger services, including boarding, are airline services within the meaning of section 1305.

However, while we agree with Northwest that "services" include boarding policies, we disagree with Northwest and the district court that "law[s] ... relating to airline services" encompass all state laws that affect airline services, however tangentially. This interpretation of § 1305(a)(1) would unduly expand preemption and ignore our presumption against federal preemption in this traditional state law area. Instead, we find that Section 1305(a)(1) preempts claims only when the underlying statute or regulation itself relates to airline services, regardless of whether the claim arises from a factual setting involving airline services. Thus, state laws that merely have an *effect* on airline services are not preempted. *See People of State of N.Y. ex rel. Abrams v. Trans World Airlines, Inc.*, 728 F.Supp. 162 (S.D.N.Y.1989).

Our analysis is consistent with Ninth Circuit case law. In *Hingson*, a blind person who was not permitted to sit in certain seats during a Pacific Southwest Airlines (PSA) flight brought suit against PSA. Hingson alleged intentional infliction of emotional distress and a claim arising under California Civil Code Section 54.1, which required that handicapped persons be given "full and equal access" to accommodations of all airplanes. *Hingson*, 743 F.2d at 1411, 1415. The Ninth Circuit held that Hingson's claims under California Civil Code Section 54.1 were preempted by section 1305(a)(1). The court reasoned that Section 54.1 was a regulation directly relating to services within the meaning of Section 1305(a)(1). *Id.* at 1415. The court, however, held that Hingson's claim for intentional infliction of emotional distress was not preempted. *Id.* This decision is consistent with our reading of section 1305(a)(1). Hingson's emotional distress claim did involve the airline's passenger services; however, the underlying law, the tort of intentional infliction of emotional distress, was not addressed exclusively to airline service. Thus, § 1305(a)(1) did not preempt.

Likewise, the court in *Air Transport Ass'n v. P.U.C.*, 833 F.2d 200 (9th Cir.1987), *cert. denied*, 487 U.S. 1236, 108 S.Ct. 2904, 101 L.Ed.2d 936 (1988) found that preemption of 1305(a)(1) did not extend to laws that only affected airlines without being directly related to their services. In *Air Transport Ass'n*, airlines and airline trade associations challenged a California regulation prohibiting telephone customers from surreptitiously overhearing or recording conversations. The airlines wished to monitor conversations between their reservation agents and the public. *Air Transport Ass'n*, 833 F.2d at 201–02. The court stated that the California regulation was not preempted because "[t]he type of telephone operation utilized by the airlines is not peculiar to airlines," and the court could find no evidence that Congress intended to preempt state regulation of utilities when they affected airlines. *Id.* at 207.

Similarly, in the instant case state law simply imposes a duty on all persons entering into contracts to act with good faith and fair dealing. The fact that this duty is applicable to airlines as well as the general public does not invoke federal preemption. We find, therefore, that West's state law claims are not expressly preempted by the FAA.

### B. Implied Preemption

▪ In order to show that the FAA impliedly preempts West's claim, Northwest

must show that Congress intended that federal law occupy the specific field covered by state law. *ARC America Corp.*, 490 U.S. at 100–01, 109 S.Ct. at 1665. Section 1506 of the FAA, however, clearly indicates that Congress had no such intention. Section 1506 reads: "Nothing contained in this Act shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this Act are in addition to such remedies." 49 U.S. C.App. § 1506 (App.1982). In force since 1938, this section was specifically retained when Congress enacted the Airline Deregulation Act of 1978 which included the preemption section 1305(a)(1). Section 1506 demonstrates Congress' intent not to preempt all common law remedies.[1] Accordingly, we find that Congress did not impliedly preempt West's state law claims under the FAA.

### C. Conflict Preemption

■■ Finally, Northwest asserts that West's claim is preempted due to a conflict with federal law. Specifically, Northwest argues that it could not comply both with the federal regulations governing boarding and state common law. We disagree.

Federal airline overbooking regulations specifically contemplate customers choosing between liquidated damages or state common law remedies. 14 C.F.R. § 250.9(b) (1990). Moreover, the Supreme Court has held that common law remedies in overbooking situations do not conflict with federal priority rules for boarding passengers and providing compensation to bumped passengers. *See Nader v. Allegheny Airlines*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). Permitting a bumped customer to forgo liquidated damages in order to pursue a common law remedy might result in different damage awards, but it would not expose Northwest to liability more than once nor would it prevent Northwest from overbooking. Northwest has offered us no reason to believe that requiring it to conform to Montana's duty of good faith and fair dealing would prevent it from following federal regulations.

However, our holding is limited to West's claim for compensatory damages and does not embrace its punitive counterpart. As stated above, federal regulations contemplate overbooking as an acceptable practice so long as passengers receive compensation. Accordingly, any scheme that *punishes* the practice would be inconsistent with applicable federal law. West's claim for punitive damages is therefore preempted by the FAA.

### CONCLUSION

For the foregoing reasons, we find that while West's state claim for punitive damages is preempted by the FAA, his claim for compensatory damages is not. In holding that this portion of West's state claim for breach of the covenant of good faith and fair dealing is not preempted, we are not deciding whether West has a valid claim. We simply hold that the FAA does not entirely preempt West's state claim. We leave it to the district court to resolve all remaining issues on remand.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

---

**1.** Additionally, federal regulations specifically permit a passenger to pursue damages under available state law if they are bumped, 14 C.F.R. § 250.9(b) (1990); this further suggests that Congress had no intention of preempting state common law remedies.