253 N.J. Super. 618 (1992)
602 A.2d 785
DONALD MILLER, PLAINTIFF-APPELLANT,
v.
NORTHWEST AIRLINES, DEFENDANT-RESPONDENT, AND JJ SECURITY, C.S. HOGAN, AND JOHN DOE, A THROUGH Z BEING UNNAMED DEFENDANTS, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued December 9, 1991.
Decided February 13, 1992.
*620 Before Judges J.H. COLEMAN, STERN and KEEFE.
Thomas E. Lenney argued the cause for appellant (Enright, Lenney & McGrath, attorneys; Thomas E. Lenney of counsel and on the brief).
John M. Willis argued the cause for respondent (Ridolfi, Friedman, Frank, Edelstein & Bernstein, attorneys; John M. Willis on the brief).
The opinion of the court was delivered by COLEMAN, J.H., P.J.A.D.
The novel issue raised in this appeal is whether plaintiff's State law tort claims are preempted by the Federal Aviation Act, 49 U.S.C.A.App. § 1301 et seq. (Act). The trial judge dismissed the complaint prior to trial because of "the provisions of pre-emption under the Federal Aviation Act" and because of the "lack of jurisdiction." The dismissal was without prejudice. We reverse and reinstate the complaint.
*621 Plaintiff, a resident of Toms River, New Jersey, purchased a round trip ticket from defendant Northwest Airlines to travel from Newark International Airport to Taiwan. On his September 20, 1989 return flight, he had to stop in Seoul, Korea, and Detroit, Michigan. While in Seoul, plaintiff purchased a cigarette lighter which was shaped like a toy pistol. The lighter remained in its gift case and was placed into plaintiff's carry-on attache case. He boarded Northwest flight No. 30 in Seoul and flew into Detroit where he was cleared by the United States Customs Agency with the cigarette lighter in his attache case.
Before boarding the Northwest plane for the last leg of his flight to Newark, plaintiff had to pass through the boarding security system. Plaintiff approached the security area and placed his attache case on a conveyor belt that moved it through the x-ray screening device in preparation for boarding. After the attache case passed through the x-ray monitor, plaintiff was asked by a member of the security force whether he had an object in the attache case which resembled a small handgun. The attache case was removed from the monitor. The facts are disputed as to what precisely occurred thereafter.
For purposes of this appeal, we will accept plaintiff's version based on the complaint and his answers to interrogatories since the case was dismissed prior to trial. Plaintiff alleges that he removed the lighter from its gift box and demonstrated to the security person that it was only a lighter by lighting a cigarette. A member of the security force employed by defendant JJ Security took the lighter and refused to give plaintiff a receipt. Willistine Hogan, an employee of JJ Security, and Frederick Huston, an employee of Northwest Airlines, detained plaintiff. Plaintiff alleges that Ms. Hogan advised him that he was under arrest and that she had requested the Detroit Police Department to send some police officers to take him into custody.
Two Detroit police officers arrived; one of them told plaintiff he was not under arrest. Plaintiff was then permitted to board *622 his flight after surrendering possession of the lighter to one of the officers. The lighter was mailed to plaintiff by the Detroit Sheriff's Department.
Plaintiff filed a complaint against Northwest Airlines, JJ Security and Willistine Hogan. Plaintiff alleged various State law claims, including false arrest, negligent and intentional infliction of emotional distress as well as other torts.[1] The complaint was dismissed as to JJ Security and Hogan for lack of personal jurisdiction. There is no appeal from those dismissals. Plaintiff appeals only from the dismissal as to Northwest Airlines. In his appeal, plaintiff contends that New Jersey has concurrent jurisdiction under the Act and that his State law claims are not preempted by the Act. We do not reach the issue of concurrent jurisdiction because no relief under federal law is sought under the complaint.
The preemption doctrine is grounded in the supremacy clause of the federal Constitution, Article VI, Clause 2 which mandates that when federal law and state law are not consistent, state law must yield. U.S. Const., art. VI, cl. 2. This supremacy prevails with federal statutes, regulations, and decisional law of the United States Supreme Court over state decisional law, state common law, state statutory law and regulations. Feldman v. Lederle Laboratories, 125 N.J. 117, 134-135, 592 A.2d 1176 (1991), (petition for cert. filed October 22, 1991) (No. 91-685); Maher v. New Jersey Transit R.O., 125 N.J. 455, 463-465, 593 A.2d 750 (1991); Dewey v. R.J. Reynolds Tobacco Co., 121 N.J. 69, 77-78, 577 A.2d 1239 (1990). The preemption doctrine exists "to avoid conflicting regulation of conduct by various official bodies [that] might have some authority over the subject matter." Amalgamated Ass'n of *623 Street, Elec. Ry. Motor Coach Employees v. Lockridge, 403 U.S. 274, 285-286, 91 S.Ct. 1909, 1917, 29 L.Ed.2d 473, 482 (1971), quoted in Maher, supra, 125 N.J. at 464, 593 A.2d 750.
Preemption in a given case depends upon whether Congress intended to exclude a state law cause of action. Thus preemption has been characterized, based on congressional intent, as being express, implied or conflict. Maher, supra, 125 N.J. at 464-465, 593 A.2d 750. It is express when it is clearly set forth by Congress in the statute. Feldman, supra, 125 N.J. at 134, 592 A.2d 1176; Dewey, supra, 121 N.J. at 77, 577 A.2d 1239. It is implied when in the absence of a clear expression of preemption, the scheme of the federal regulation is so pervasive that it is reasonable to infer that Congress left no room for state regulation. Feldman, supra; Maher, supra, 125 N.J. at 464, 593 A.2d 750; Dewey, supra. When there is neither express nor implied congressional intent to occupy the entire field, and yet there exists a conflict between state law and federal law, conflict preemption exists because compliance with both state and federal law is impossible. Feldman, supra, 125 N.J. at 135, 592 A.2d 1176; Maher, supra, 125 N.J. at 464-465, 593 A.2d 750; Dewey, supra, 121 N.J. at 78, 577 A.2d 1239.
Now we must turn to the area of law involved to determine whether the Act preempts plaintiff's State law tort claims. The Act in pertinent part, provides in 49 U.S.C.A.App. § 1305(a)(1) that:
[N]o state or political subdivision thereof and no interstate agency or other political agency of two or more States shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier having authority ... to provide air transportation. [Ibid.]
It has been conceded that "rates and routes" are not involved in this case. The claim of preemption is based on "services" which is not defined in the Act. While we are not bound by the decisions of the lower federal courts, Dewey, supra, 121 N.J. at 79-80, 577 A.2d 1239, we look to lower federal court decisions *624 for guidance in deciding whether Congress intended to preempt plaintiff's State law claims as "services."
Defendant argues that Section 1111 of the Act, which permits an airline to refuse to transport a passenger or property when such transportation might prove inimical to safety, shows that Congress has so pervasively regulated the field of airline safety that there is no room for State regulation. See 49 U.S.C.A.App. § 1511. This is an implied preemption argument rejected in Dewey and Feldman. We also reject any implied preemption because we do not find the scheme of regulations under the Act to be so pervasive as to require us to infer that Congress left no room for a state law tort or contract cause of action.
Two Ninth Circuit cases inform our decision. The first is West v. Northwest Airlines, Inc., 923 F.2d 657 (9th Cir.1990) (petition for cert. filed October 31, 1991) (No. 91-734). There, plaintiff purchased a ticket to fly on defendant's airline and was unable to fly because of overbooking. Plaintiff instituted a state common law breach of contract suit. The court held that airlines' boarding practices were "services" within the meaning of Section 105 of the Act. Id. at 660. The court nonetheless concluded that Section 1305 "preempts claims only when the underlying statute or regulation itself relates to airline services, regardless of whether the claim arises from a factual setting involving airline services. Thus, state laws that merely have an effect on airline services are not preempted." Id. at 660 (emphasis in original). The court further stated that "when Congress legislates in a field traditionally occupied by the states, such as common law tort and contract remedies in business relationships, there is a presumption against preemption of state law." Id. at 659.
The second case from the Ninth Circuit is Hingson v. Pacific Southwest Airlines, 743 F.2d 1408 (9th Cir.1984). Hingson, who was blind, filed a state common law claim for intentional infliction of emotional distress because the airline insisted that *625 he sit in a bulkhead seat. The court held that although the airlines' seating policy for blind persons involved "services" within the meaning of Section 1305, the state law claim was not preempted. Id. at 1415-1416.
In both cases, the Ninth Circuit held that the state law claims must be considered in conjunction with Section 1106 of the Act. This section provides, "Nothing contained in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.A.App. § 1506. The West court noted that Section 1506, in force since 1938, was specifically retained when Congress enacted the Airline Deregulation Act of 1978, which includes Section 1305. West, supra, 923 F.2d at 661. Viewed in that context, it is readily apparent that, "Section 1506 demonstrates Congress' intent not to preempt all common law remedies." Ibid. (footnote omitted).
We are satisfied that airlines security respecting boarding and carry-on baggage falls in the category of "services." We fully agree, however, with the Ninth Circuit that state law claims for common law torts and breach of contract merely have an effect on those services. Here, instead of a congressional intent to preempt common law claims, the opposite is true in that there exists under Section 1506 a clearly expressed congressional intent not to preempt the type of state law claims presented in this case. If plaintiff is successful in his claims, that will not interfere in any manner with the airlines' operation of proper security for passengers boarding with carry-on baggage. Any impact, would be collateral and would in all likelihood improve the demeanor of the security personnel. We do not, however, express any opinion on the merits of plaintiff's claims.
Defendant also argues that plaintiff's only remedy is pursuant to Section 1511. We disagree. State law causes of action are not preempted solely because they impose liability over and above that authorized by federal law. English v. *626 General Elec. Co., 496 U.S. 72, 89, 110 S.Ct. 2270, 2280, 110 L.Ed.2d 65, 81 (1990); Feldman, supra, 125 N.J. at 136, 592 A.2d 1176.
We hold that plaintiff's State law claims are not preempted by the Act. Plaintiff's complaint alleges negligent and intentional torts, which "concern rights and remedies traditionally defined solely by state law, ... defendant here must overcome a presumption against preemption." Feldman, supra, 125 N.J. at 137, 592 A.2d 1176; West, supra, 923 F.2d at 659. That presumption has not been rebutted by defendant. Furthermore, we have been admonished by the Supreme Court in English not to seek to find conflicts between state and federal regulations where none clearly exists. That is precisely what we would have to do in order to find conflict preemption.
The order dismissing the complaint is reversed and the complaint reinstated. The matter is remanded to the Law Division to proceed further in the matter.
NOTES
[1] No choice of law issue has been raised in this appeal. But see Mueller v. Parke Davis, 252 N.J. Super. 347, 599 A.2d 950 (App.Div. 1991). Therefore, we must decide the preemption issue under New Jersey law. See Sussman v. Ostroff, 232 N.J. Super. 306, 312 n. 1, 556 A.2d 1301 (App.Div.), certif. denied, 117 N.J. 143, 564 A.2d 865 (1989).