62 A.3d 321

MICHAEL ROSEN, PLAINTIFF–APPELLANT, v. CONTINENTAL AIRLINES, INC., DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted September 11, 2012—Decided February 25, 2013.

Before Judges MESSANO, OSTRER and KENNEDY.

*Nathan Kittner,* attorney for appellant.

*LeClairRyan,* attorneys for respondent (*Peter B. Van Deventer, Jr.* and *Douglas H. Amster,* of counsel; *Mr. Van Deventer, Mr. Amster* and *Kevin A. Hickman,* on the brief).

The opinion of the court was delivered by

KENNEDY, J.A.D.

Plaintiff appeals from a Law Division order dismissing with prejudice the counts in his complaint alleging that defendant violated the New Jersey Consumer Fraud Act (CFA), *N.J.S.A.* 56:8–1 to –20 (count two); that defendant's refusal to accept cash during a flight constituted unlawful "discrimination against low income individuals" (count three); and that defendant, by refusing

to accept cash during the flight, prevented plaintiff from enjoying in-flight amenities, and caused plaintiff to suffer "severe mental anguish and emotional distress" (count four). The order denied defendant's motion to dismiss plaintiff's breach of contract claim (count one), but plaintiff later voluntarily dismissed this count making the order appealable as of right.[1]

The motion judge determined that plaintiff's claims under the CFA, and other state tort claims, were preempted by a specific clause of the federal Airline Deregulation Act (ADA), 49 *U.S.C.A.* § 41713(b)(1), and that plaintiff's claim for class certification was baseless. We affirm.

We derive the following facts from the record. On December 1, 2009, defendant instituted a cashless cabin policy for accounting and security purposes. Defendant informed the public of this change in policy by issuing a nationwide press release, and through pre-boarding announcements and announcements after completion of the boarding process. The motion judge recited other pertinent facts, which are undisputed:

[In] 2009 plaintiff Michael Rosen purchased a round trip flight ticket from Newark, New Jersey to Los Angeles, California with the defendant Continental Airlines. While on board the flight from Newark to Los Angeles plaintiff purchased a headset by credit card from defendant for in-flight movies.

Prior to purchasing the headset the passengers on the flight were advised that headsets could be used on future Continental flights. On January 6th, 2011, plaintiff boarded the return flight from Honolulu, Hawaii to Newark. On that flight the plaintiff attempted to use the headset purchased on the prior flight and discovered the headset was not compatible with "jacks" and he would have to purchase a new headset which would be compatible with the available jacks.

Plaintiff tried to purchase a new headset with cash. But defendant's representative indicated that the defendant was only capable of accepting payments by credit card or debit card. Plaintiff later tried to purchase a cocktail and was told that Continental had a no cash policy on its airplane and that he could not make any purchases unless he possessed a debit or credit card.

---

[1] As a matter of fairness and judicial economy, plaintiff cannot now appeal from his own voluntary dismissal of his breach of contract claim. *See Winberry v. Salisbury*, 5 *N.J.* 240, 255, 74 *A.2d* 406, *cert. denied*, 340 *U.S.* 877, 71 *S.Ct.* 123, 95 *L.Ed.* 638 (1950); *Cooper Medical Ctr. v. Boyd*, 179 *N.J.Super.* 53, 56, 430 *A.2d* 261 (App.Div.1981).

Since plaintiff did not have in his possession either debit or credit card he was unable to make any purchases on the flight.

Plaintiff filed suit on October 4, 2010, in the Law Division, asserting the causes of action noted above. On defendant's motion, the case was initially removed to the federal district court, but was later remanded to the Law Division, where defendant then moved to dismiss plaintiff's complaint for failure to state a claim on which relief could be granted pursuant to *Rule* 4:6–2(e). Plaintiff opposed the motion, and filed a cross-motion for leave to file an amended complaint asserting a class action. After hearing argument, Judge Denise A. Cobham issued an order dismissing, with prejudice, the second, third and fourth counts of plaintiff's complaint, and denying plaintiff's cross-motion for leave to amend the complaint to assert a class action. This appeal followed.

I.

In considering a motion to dismiss under *Rule* 4:6–2(e), courts search the allegations of the pleading in depth and with liberality to determine "whether a cause of action is 'suggested' by the facts." *Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 *N.J.* 739, 746, 563 *A.2d* 31 (1989) (quoting *Velantzas v. Colgate–Palmolive Co.*, 109 *N.J.* 189, 192, 536 *A.2d* 237 (1988)). We must therefore determine "whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." *Ibid.* (citation omitted). A pleading should be dismissed if it states no basis for relief and discovery would not provide one. *Camden Cnty. Energy Recovery Assocs. v. N.J. Dep't of Envtl. Prot.*, 320 *N.J.Super.* 59, 64, 726 *A.2d* 968 (App.Div.1999), *aff'd,* 170 *N.J.* 246, 786 *A.2d* 105 (2001).[2]

Guided by these principles, we turn to plaintiff's complaint.

---

[2] We are mindful of the fact that defendant, seeking dismissal of plaintiff's complaint on grounds of federal preemption, *see infra,* might have made its motion to dismiss pursuant to *Rule* 4:6–2(a) for lack of subject matter jurisdiction. *Cf. Wigginton v. Servidio,* 324 *N.J.Super.* 114, 124–25, 734 *A.2d* 798 (App.Div.1999), *certif. denied,* 163 *N.J.* 11, 746 *A.2d* 457 (2000). However,

## II.

Plaintiff argues that defendant's cashless policy violates the CFA "by falsely and/or incorrectly advertising that the headset could be used on future Continental flights" and "by refusing to accept [his] lawful tender of payment in order to purchase another headset and/or alcoholic beverages." We disagree. Such claims are expressly preempted by the ADA. 49 *U.S.C.A.* § 41713(b)(1).

Under the Supremacy Clause, *U.S. Const.* art. VI, cl. 2, state laws that " 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wis. Pub. Intervenor v. Mortier,* 501 *U.S.* 597, 604, 111 *S.Ct.* 2476, 2481, 115 *L.Ed.*2d 532, 542 (1991) (quoting *Gibbons v. Ogden,* 22 *U.S.* (9 *Wheat*) 1, 211, 6 *L.Ed.* 23, 73 (1824)). Thus, "when the mandates of federal law and state law are not consistent, the state law must yield." *Feldman v. Lederle Lab.,* 125 *N.J.* 117, 133, 592 *A.*2d 1176 (1991), *cert. denied,* 505 *U.S.* 1219, 112 *S.Ct.* 3027, 120 *L.Ed.*2d 898 (1992). The preemption doctrine applies equally to common law and state statutory law. *Id.* at 134, 592 *A.*2d 1176 (citing *Chicago N.W. Transp. Co. v. Kalo Brick & Tile Co.,* 450 *U.S.* 311, 325–26, 101 *S.Ct.* 1124, 1134, 67 *L.Ed.*2d 258, 270 (1981)).

In 1978, Congress enacted the ADA, based on the determination that " 'maximum reliance on competitive market forces' would best further 'efficiency, innovation, and low prices' as well as 'variety [and] quality . . . of air transportation services[.]' " *Morales v. Trans World Airlines, Inc.,* 504 *U.S.* 374, 378, 112 *S.Ct.* 2031, 2034, 119 *L.Ed.*2d 157, 164 (1992). To ensure that the states would not undermine the federal deregulation scheme with regulations of their own, the ADA contains a preemption provision that prohibits states from interfering with the deregulation process:

(b) Preemption.–(1) Except as provided in this subsection, a State, political subdivision of a State, or political authority of at least 2 States may not enact or enforce a

---

because defendant moved to dismiss under *Rule* 4:6–2(e), and the motion court was guided by the principles under that rule, we likewise limit our review to *Rule* 4:6–2(e).

law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart.

[49 *U.S.C.A.* § 41713(b)(1) (amending 49 *U.S.C.A.* § 1305(a)).]

■■■ The broad preemption principles set forth in 49 *U.S.C.A.* § 41713(b)(1) preclude any state cause of action relating to a service provided by an air carrier. *Hodges v. Delta Airlines, Inc.,* 44 *F.*3d 334, 336 (5th Cir.1995) ("state enforcement actions having a connection with or reference to airline 'rates, routes or services' are preempted"). The United States Supreme Court has determined that the ADA preempts state law claims. *See, e.g., American Airlines v. Wolens,* 513 *U.S.* 219, 221, 115 *S.Ct.* 817, 820, 130 *L.Ed.*2d 715, 721 (1995); *Morales, supra,* 504 *U.S.* at 383, 112 *S.Ct.* at 2036–37, 119 *L.Ed.*2d at 167. The United States Supreme Court's interpretation of a federal statute is, of course, controlling. *See Dewey v. R.J. Reynolds Tobacco Co.,* 121 *N.J.* 69, 79, 577 *A.*2d 1239 (1990).

In *Wolens, supra,* the Supreme Court held that the purpose of the clause is "to leave largely to the airlines themselves, and not at all to States, the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services...." 513 *U.S.* at 228, 115 *S.Ct.* at 824, 130 *L.Ed.*2d at 726 (holding that the ADA preempts state law claims under the Illinois Consumer Fraud Act against an airline arising out of American Airlines' retroactive modification to its frequent flyer program). Of particular import is the Court's holding that:

The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated.

[*Id.* at 232–33, 115 *S.Ct.* at 826, 130 *L.Ed.*2d at 728.] 3

---

3 The Court in *Wolens, supra,* concluded that, notwithstanding its preemption clause, "the ADA permits state-law-based court adjudication of routine breach-of-contract claims...." 513 *U.S.* at 232, 115 *S.Ct.* at 826, 130 *L.Ed.*2d at 728. Here, of course, plaintiff voluntarily dismissed that claim and, consequently, cannot appeal from that decision. *See infra.*

■ Here, resolution of the preemption issue hinges on whether the sale of a headset and an alcoholic beverage "relat[es] to price, routes, or service[.]" We hold that it does. In *Morales, supra,* the Supreme Court gave broad meaning to the phrase "relating to rates, routes, or services" contained in the ADA's preemption clause, and indicated that it prohibits states from taking any "enforcement actions having a connection with, or reference to, airline 'rates, routes, or services[,]' " whether through laws specifically addressed to the airline industry or through more general statutes. 504 *U.S.* at 384, 112 *S.Ct.* at 2037, 119 *L.Ed.*2d at 167–68. Therefore,

the Court determined: (1) that "state enforcement actions having connection with, or reference to" carrier "rates, routes, or services are pre-empted," (2) that such pre-emption may occur even if a state law's effect on rates, routes or services "is only indirect," (3) that, in respect to pre-emption, it makes no difference whether a state law is "consistent" or "inconsistent" with federal regulation, and (4) that pre-emption occurs at least where state laws have a "significant impact" related to Congress' de-regulatory and pre-emption related objectives.

[*Rowe v. N.H. Motor Transp. Ass'n,* 552 *U.S.* 364, 370–71, 128 *S.Ct.* 989, 995, 169 *L.Ed.*2d 933, 939 (2008) (citing *Morales, supra,* 504 *U.S.* at 384, 386–87, 390, 112 *S.Ct.* at 2037–38, 2040, 119 *L.Ed.*2d at 167–69, 171).]

Citing *Morales,* we have held that CFA claims based on ticket prices reflecting surcharges concern airline "rates, routes or services" and are therefore preempted. *Vail v. Pan Am Corp.,* 260 *N.J.Super.* 292, 297–98, 616 *A.*2d 523 (App.Div.1992). In *Vail,* we dismissed a CFA claim on preemption grounds where the airline imposed a $5.00 per ticket surcharge for an enhanced security program that allegedly did not exist or had never been implemented. *Vail, supra,* 260 *N.J.Super.* at 299–302, 616 *A.*2d 523. We stated that "[p]ermitting plaintiffs' claims ... vitiates the exclusive federal occupation of the field of aviation, and frustrates the broad preemptive purpose of § 1305(a)(1) to create a unified system of airline regulation." *Id.* at 302, 616 *A.*2d 523; *see also Blackner v. Continental Airlines, Inc.,* 311 *N.J.Super.* 10, 14, 709 *A.*2d 258 (App.Div.) (affirming the trial court's dismissal on preemption grounds of plaintiff's complaint, which alleged that a $60.00 surcharge for replacement of a lost airline ticket bore no reasonable relationship to any cost incurred by the airline to

replace the lost ticket), *certif. denied,* 156 *N.J.* 405, 719 *A.*2d 637 (1998).

Plaintiff argues that *Morales* cautions against finding preemption "in cases where the states' laws impact on an air carrier's services is 'tenuous, remote or peripheral.' *Morales, supra,* 504 *U.S.* at 390, 112 *S.Ct.* at 2040, 119 *L.Ed.*2d at 172." This argument, however, was rejected by the United States Supreme Court in *Wolens.* There, the Court stated, "[w]e need not dwell on the question whether plaintiffs' complaints state claims 'relating to [air carrier] rates, routes, or services.' *Morales,* we are satisfied, does not countenance the Illinois Supreme Court's separation of matters 'essential' from matters unessential to airline operations." *Wolens, supra,* 513 *U.S.* at 226, 115 *S.Ct.* at 823, 130 *L.Ed.*2d. at 724. *Wolens* clarified that a breach of contract claim should not be preempted, *see id.* at 228, 115 *S.Ct.* at 824, 130 *L.Ed.*2d at 725, but, as we stated earlier, plaintiff's claim for breach of contract was voluntarily dismissed below, and is therefore not appealable.

Although the Supreme Court broadly interprets the scope of the ADA's preemption provision, the Court has yet to define what constitutes a "service." *Northwest Airlines, Inc. v. Duncan,* 531 *U.S.* 1058, 1058, 121 *S.Ct.* 650, 650, 148 *L.Ed.*2d 571, 571–72 (2000) (O'Connor, J., dissenting from the denial of certiorari). There are two "directly conflicting positions" respecting its definitions among the courts of appeals. *Ibid.* The minority view construes "service" narrowly. *Ibid.* (citing *Duncan v. Northwest Airlines, Inc.,* 208 *F.*3d 1112, 1114–15 (9th Cir.2000) (holding "that the term 'service' encompasses 'the prices, schedules, origins and destinations of the point-to-point transportation of passengers, cargo, or mail,' but not the 'provision of in-flight beverages, personal assistance to passengers, the handling of luggage, and similar amenities.' *Charas v. Trans World Airlines, Inc.,* 160 *F.*3d 1259, 1261 (9th Cir.1998)"), *cert. denied, Northwest Airlines, supra,* 531 *U.S.* 1058, 121 *S.Ct.* 650, 148 *L.Ed.*2d 571).

In contrast, the majority view defines "service" much more broadly, and includes " 'contractual features of air transportation,'

including 'ticketing, boarding procedures, provision of food and drink, and baggage handling.'" *Ibid.* (quoting *Hodges, supra,* 44 *F.*3d at 336); *see also Air Transport Ass'n of Am. v. Cuomo,* 520 *F.*3d 218, 223 (2d Cir.2008) (confirming that the "majority" of the circuit courts hold "that the term refers to the provision or anticipated provision of labor from the airline to its passengers and encompasses matters such as boarding procedures, baggage handling, and food and drink-matters incidental to and distinct form the actual transportation of passengers"). Given the broad meaning the United States Supreme Court has already accorded to the phrase encompassing the term "service[,]" we determine that the broad, majority definition more closely comports with congressional intent. *See Wolens, supra,* 513 *U.S.* at 228, 115 *S.Ct.* at 824, 130 *L.Ed.*2d at 726.

Employing the definition accepted by the majority of the circuit courts, then, we determine that plaintiff's claims, under the CFA, are preempted because the claims relate to a "service." As explained above, the term "service" includes "[e]lements of the air carrier service bargain[,]" which "include[s] provision of food and drink." *Hodges, supra,* 44 *F.*3d at 336. Further, the provision of an airline entertainment headset falls squarely within that definition, as well.

Based on our analysis of the statutory language and case law, we are also satisfied plaintiff's common law fraud and tort claims are preempted by Section 41713(b)(1), as they "relate to a price, route, or service of any airline carrier" involved in the sale of airline goods. Any contrary interpretation would be unsupported by the language of the statute, longstanding principles of statutory construction, and the expressed reasoning of the United States Supreme Court. *See Morales, supra,* 504 *U.S.* at 384–85, 112 *S.Ct.* at 2037, 119 *L.Ed.*2d at 168; *see also Wolens, supra,* 513 *U.S.* at 232, 115 *S.Ct.* at 826, 130 *L.Ed.*2d at 728; *Vail, supra,* 260 *N.J.Super.* at 298, 616 *A.*2d 523. Accordingly, we affirm the motion court's dismissal of these claims.

### III.

■ Plaintiff argues that the motion court improperly denied his cross-motion to certify a class action consisting of claims of all low income individuals and unaccompanied minors that have traveled on Continental flights since the institution of the cashless cabin policy and have been deprived of the opportunity to purchase amenities on those flights. We need not address this issue because we have already held that plaintiff's claims are preempted by the ADA. We add only the following.

■ As a threshold issue, plaintiff's putative class action is improper, because plaintiff himself lacks standing as a member of the putative class. *Rule* 4:32–1 provides that "one or more members of a class may sue or be sued as representative parties[.]" It is well established that, in order to bring a class action lawsuit, the named representative must individually have standing to bring their claims. *See R.* 4:32–1(a)(3); *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 *F.*3d 124, 135 (3d Cir.2000) (plaintiff who lacks the personalized, redressable injury required for standing to assert claims on his own behalf would also lack standing to assert similar claims on behalf of class); *Laufer v. U.S. Life Ins. Co. in City of New York*, 385 *N.J.Super.* 172, 186, 896 *A.*2d 1101 (App.Div.2006). Consequently, "if the named plaintiffs bringing class action claims do not individually have standing to bring those claims, the case should be dismissed prior to the class certification process." *Ramirez v. STi Prepaid LLC*, 644 *F.Supp.*2d 496, 504 (D.N.J.2009).

Plaintiff's putative class would consist of unaccompanied minors, low income individuals and others who are not in possession of credit cards. Plaintiff does not have standing as the class representative, however, because plaintiff is neither an unaccompanied minor nor a person without a credit card. It is undisputed that plaintiff has a credit card and used it to pay defendant's baggage fee and the fee for the headset on his previous flight. Consequently, plaintiff does not have standing to bring these claims on behalf of the other members of the class.

The remainder of plaintiff's arguments are without sufficient merit to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E).

Affirmed.