William D. WEST, Plaintiff–Appellant,

v.

NORTHWEST AIRLINES, INC., Defendant–Appellee.

No. 89–35820.

United States Court of Appeals, Ninth Circuit.

June 3, 1993.

---

Cornish F. Hitchcock, Public Citizen Litigation Group, Washington, DC, for plaintiff-appellant.

John N. Romans, Mark Dombroff, Lawrence Rosen, and John Henderson, Katten Muchin Zavis & Dombroff, New York City, for defendant-appellee.

Before HUG, D.W. NELSON, and BRUNETTI, Circuit Judges.

D.W. NELSON, Circuit Judge:

The Supreme Court remanded this case — U.S. —, 112 S.Ct. 2932, 119 L.Ed.2d 558, — U.S. —, 112 S.Ct. 2986, 120 L.Ed.2d 864, to us for further consideration in light of *Morales v. Trans World Airlines, Inc.*, 504 U.S. —, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992). We hereby withdraw our previous Opinion in this case, filed as amended February 5, 1991, and substitute this Opinion.

Plaintiff-appellant, William D. West ("West"), purchased a ticket to travel on Northwest Airlines, Inc. ("Northwest"). Northwest overbooked West's flight and refused to allow West to board the plane. West brought this action against Northwest for breach of the covenant of good faith and fair dealing under Montana law. The district court granted summary judgment for Northwest on the ground that West's claim was preempted by the Federal Aviation Act. We now affirm in part and reverse in part, and we remand to the district court to determine whether West has a meritorious claim for compensatory damages under Montana law.

## FACTUAL AND PROCEDURAL BACKGROUND

On September 3, 1986, West purchased a non-refundable, non-changeable ticket to travel on Northwest from Great Falls, Montana to Arlington, Virginia. His flight was

scheduled to depart Great Falls at 1:30 p.m. and to arrive in Arlington at 9:00 p.m. on October 7, 1986. West confirmed his scheduled departure with his travel agent on October 6, 1986.

Between the date of purchase and the scheduled departure date, Northwest decided to reduce the size of its aircraft from a Boeing 727, which carries 146 passengers, to a DC 9 aircraft, which carries 78 passengers. When West arrived at the check-in gate, a Northwest employee informed him that the flight was overbooked. Northwest attempted to make room for West and other passengers by requesting volunteers to deplane in exchange for certain payments. However, only three people accepted, and West was unable to board the flight.

Northwest then offered West an alternate flight that would arrive at nearby Dulles Airport at 3:00 a.m. the next morning. West declined to take this flight and made his own arrangements to travel to Arlington at a later date. West subsequently filed claims in state court for breach of the covenant of good faith and fair dealing under Montana law and for unjust discrimination under section 404(b) of the Federal Aviation Act ("FAA"), 49 U.S.C.App. § 1301 et seq., seeking both compensatory and punitive damages on the state and federal claims.

Northwest successfully petitioned the United States District Court to remove the case to the federal court on the basis of diversity of citizenship. Northwest then moved for summary judgment on the grounds that the period for bringing a claim under Section 404(b) had expired and that West's state claim was preempted by the FAA. On September 28, 1989, the district court granted Northwest's motion for summary judgment on both grounds.

West timely appealed only the issue of whether the district court erred in dismissing West's state law claim on the ground that it was preempted by the FAA. This court previously affirmed in part and reversed in

part, finding that the FAA preempted West's claim for punitive damages but that it did not preempt his claim for compensatory damages under Montana law.

West then petitioned the Supreme Court for certiorari, claiming that punitive damages were not preempted. Northwest cross-petitioned on the grounds that the state claims for compensatory damages were preempted by the FAA. The Supreme Court waited to decide the petitions until after it decided *Morales,* and then denied West's petition but granted Northwest's and remanded the case to this court to reconsider whether compensatory damages are preempted.

After receiving another petition from West claiming that the Court's rules prohibited it from granting certiorari on a cross-petition but not the initial petition, the Supreme Court vacated its denial of West's petition and granted certiorari on both petitions. It then remanded the case to this court for further proceedings on both questions in light of *Morales.*

## DISCUSSION

### I. Standard of Review

A grant of summary judgment is reviewed de novo to determine, viewing the evidence in the light most favorable to the nonmoving party, whether there existed any genuine issue of material fact and whether the district court correctly applied the relevant substantive law. *Tzung v. State Farm Fire & Casualty Co.,* 873 F.2d 1338, 1339–40 (9th Cir.1989).

### II. Preemption Analysis

In *Morales,* the Supreme Court considered whether or not the Airline Deregulation Act ("ADA"), § 1305(a)(1) of the FAA, preempted enforcement of a detailed set of guidelines concerning the regulation of airline fare advertising through state consumer protection laws.[1]

---

1. These guidelines—the Air Travel Industry Enforcement Guidelines—were promulgated by the Task Force on the Air Travel Industry of the National Association of Attorneys General ("NAAG"). They were intended to govern "the

content and format of airline advertising, the awarding of premiums to regular customers (so-called 'frequent flyers'), and the payment of compensation to passengers who voluntarily yield their seats on overbooked flights." *Morales,* 504

The Court held that the ADA expressly preempted the guidelines because their enforcement "relat[ed] to rates, routes, or services of any air carrier...." *Morales*, 504 U.S. at ——, 112 S.Ct. at 2037. The Court interpreted this preemptive clause broadly:

> For purposes of the present case, the key phrase, obviously, is 'relating to.' The ordinary meaning of these words is a broad one ... and the words thus express a broad pre-emptive purpose.

*Id.* In crafting this clause, reasoned the Court, Congress intended to preempt state laws which interfered with the goal of deregulation of the airline industry.

In so holding, the Supreme Court invalidated this court's approach to FAA preemption in our original Opinion in this case. Under our pre-*Morales* reasoning, we distinguished between state laws which "merely have an effect on airline services" and those involving an "underlying statute or regulation [which] itself relates to airline services," and held that only the latter are preempted by the ADA. *West v. Northwest Airlines, Inc.*, 923 F.2d 657, 660 (9th Cir.1990). *Morales* directly challenges this analysis.

■ We find that, under the reasoning in *Morales*, the ADA preempts West's claim for punitive damages under state contract and tort law, but that it does not preempt his claim for compensatory damages under state law. *Morales* left open the possibility that certain state laws would not be preempted by the ADA even under the broad reading of the preemption clause:

> [W]e do not ... set out on a road that leads to pre-emption of state laws against gambling and prostitution as applied to airlines. Nor need we address whether state regulation of the nonprice aspects of fare advertising ... would similarly 'relat[e] to' rates; the connection would obviously be far more tenuous. To adapt to

this case our language in *Shaw* [*v. Delta Airlines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) ], '[s]ome state actions may affect [airline fares] in too tenuous, remote, or peripheral a manner' to have pre-emptive effect.

*Morales*, 504 U.S. at ——, 112 S.Ct. at 2040 (citation omitted; brackets in original).

■ We believe that the state contract and tort laws under which West seeks relief are within that range of statutes too tenuously connected to airline regulation to trigger preemption under the ADA, what the *Morales* court called "borderline questions." *Morales,* however, does not provide much guidance to courts which must decide which state laws fall into this category and which do not.

When it is unclear whether or not a state law comes within the ADA's preemption reach, courts must look outside the controlling statute for guidance. In other contexts, the Supreme Court has held that when the statute is silent or ambiguous courts should turn to agency regulations for clarification.

> If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute.

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984).

In the case of the Airline Deregulation Act, the agency regulations interpreting the FAA are particularly illuminating. Title 14 of Code of Federal Regulations implements the FAA, including the deregulation provision. 14 C.F.R. § 250.1 et seq. (1990). Part 250 of that title is a detailed set of rules pertaining to airline "oversales" or overbooking of flights.[2] In the wake of the deregulation

---

U.S. at ——, 112 S.Ct. at 2034. According to the NAAG, the regulations "merely explain in detail how existing state laws apply to air fare advertising and frequent flyer programs." *Morales, Id.* at ——, 112 S.Ct. at 2041.

**2.** Both before and after deregulation, this section of the C.F.R. is the only federal regulatory language governing airline bumping. "Under the

Airline Deregulation Act of 1978, the Civil Aeronautics Board maintained its former authority over tariffs as to over-booking and in 14 C.F.R. part 250 established the procedures and minimum standards to be followed by the airlines with respect to passengers holding confirmed reservations who are bumped as a result of over-

legislation, Part 250 was substantially amended, but § 250.9, the provision giving passengers the option of rejecting airline compensation and pursuing a remedy under state law, has not been altered. *See* 47 Fed.Reg. 52980 (Nov. 24, 1982); 46 Fed.Reg. 62285 (Dec. 12, 1981).

This provision expressly contemplates that an injured passenger may seek relief in court for being bumped from an overbooked flight. According to § 250.9(b), the bumped passenger has three options: (1) he may accept the airline's offer of alternate transportation; (2) he may accept airline compensation (in the form of money or a voucher for future travel or some combination of the two); or, (3) "the passenger may decline the payment and seek to recover damages in a court of law or in some other manner." 14 C.F.R. § 250.9(b).

This court and at least one other circuit have recognized the controlling authority of this provision in the post-deregulation period. In *Christensen v. Northwest Airlines, Inc.*, 633 F.2d 529 (9th Cir.1980), this court held that a passenger involuntarily denied boarding could not seek a state tort remedy under § 250.9(b) because she had already accepted the airline's offer of alternate transportation. *See also Wasserman v. Trans World Airlines, Inc.*, 632 F.2d 69 (8th Cir.1980) (bumped passenger who accepted alternate transportation is precluded from bringing state claim under § 250.9(b)).

█ Were we to hold that West's state claims are preempted completely by the ADA, we would eviscerate the third option detailed in the regulation. The plain language of the regulation indicates that passengers retain the option (if they reject alternative flight arrangements, cash, or voucher payment) of pursuing *compensatory* damages in state court. Northwest argues that West is preempted from seeking state remedies but not uniform federal remedies, but the language of § 250.9(b) is broad, referring to damages in "a court of law" generally. Thus, we decline to read such a limitation into this provision. Since this regulation is not "arbitrary, capricious, or contrary" to the statute, it should have controlling authority.

selling." *Lopez v. Eastern Airlines, Inc.*, 677

█ West's right to pursue *punitive* damages in his state claims, however, must be limited. Since punitive damages by their very nature seek to punish the entity against whom they are awarded, such damages awarded in response to bumping resulting from airline overbooking would be contrary to the goals of deregulation. Overbooking and bumping are accepted forms of price competition and reduction in the deregulation period, thus any law or regulation which results in penalizing airlines for these practices is preempted by the FAA.

## CONCLUSION

For the foregoing reasons, we find that while West's state claim for punitive damages is preempted by the FAA, his claim for compensatory damages is not. In holding that this portion of West's state claim for breach of the covenant of good faith and fair dealing is not preempted, however, we do not decide whether West has a valid claim. We leave it to the district court to resolve that remaining issue on remand.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

BRUNETTI, Circuit Judge, concurring in part and dissenting in part:

This panel previously ruled on West's claim for compensatory and punitive damages under Montana law. *West v. Northwest Airlines*, 923 F.2d 657 (9th Cir.1991). In that opinion, we held that West's claim for punitive damages was preempted by the Airline Deregulation Act ("ADA"), § 1305(a)(1) of the FAA, but that his claim for compensatory damages was not. 923 F.2d at 660. The Supreme Court vacated that opinion and remanded the case for reconsideration in light of *Morales v. Trans World Airlines, Inc.*, 504 U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992).

The majority now reaches the same result as in the original opinion which the Court vacated. Although I concur in the holding that West's claim for punitive damages is preempted by the ADA, I cannot agree that

F.Supp. 181, 182 (S.D.N.Y.1988).

his claim for compensatory damages under state law is not also preempted in light of *Morales.*

The majority arrives at this result by seizing on the caveat at the end of the *Morales* opinion that despite the Court's holding (that the fare advertising guidelines of the National Association of Attorneys General are preempted by the ADA), there may still be some state actions which affect airline rates, routes, or services in so "tenuous, remote, or peripheral a manner" that they need not be deemed preempted by the provisions of the ADA. *Morales,* 504 U.S. at ——, 112 S.Ct. at 2040, *quoting Shaw v. Delta Airlines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). The majority classifies West's compensatory damages claim as one such "borderline" action, with sufficiently peripheral effect that we must look to the administrative rules for guidance on whether preemption is proper.

Our first resort must be to the language of the preemption statute itself. The ADA's federal preemption section provides in relevant part:

[N]o state ... shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ...

49 U.S.C.A.App. § 1305 (1992). The *Morales* Court made clear that the "relating to" language is to have a very broad scope, encompassing within its reach statutes or actions "having a connection with or reference to airline 'rates, routes, or services.'" *Id.* at ——, 112 S.Ct. at 2037.

We must reach the same result here as the Court reached in *Morales* itself—that the suit is preempted—unless we can say that West's action to recover damages for his being bumped from the flight does not "relate to" airline services. I am unable to reach this conclusion.

An airline's boarding practices certainly come within the ambit of the "airline services" which it provides to its customers. We expressly recognized this in our original opinion. 923 F.2d at 660. Aside from a state law explicitly barring the practice, one

strains to conceive of an action which could relate to those services more directly than a lawsuit seeking damages for the inevitable result of those boarding practices—a passenger getting "bumped."

The majority in effect concludes that West's suit is not "related to" airline services. The opinion's invocation of the "tenuous connection" language avoids having to make that statement, but it says the same thing. As I read the case, *Morales'* "tenuous, remote, or peripheral" language is simply the other side of the "related to" coin. *See* 504 U.S. at ——, 112 S.Ct. at 2040. If an action has too tenuous an effect on airline rates (or services), it is not "related to" those services, and is not preempted by § 1305 of the ADA. I would find that West's action does relate to airline services and is therefore preempted under the ADA.

As the majority points out, the FAA has promulgated a regulation directed to this precise circumstance. *See* 14 C.F.R. § 250.9 (1990). This regulation expressly provides for a "bumped" passenger to elect to seek damages "in a court of law or in some other manner." 14 C.F.R. § 250.9(b). The existence of this regulation, however, does not support a finding that such a suit in state court is not preempted by the ADA.

The fact that the FAA found it necessary to draft regulations addressing the situation of the bumped passenger lends further support to the conclusion that a passenger's suit for damages from that practice "relates to" airline services. In addition, where the act itself sets forth a broad and effective statement of its preemptive effect, the FAA is powerless to create exceptions by way of administrative regulation. I believe that is the case here. Section 1305 of the ADA, in light of the teaching of *Morales,* preempts a state suit for damages for being bumped from a domestic flight. Any attempt by the FAA to change that result by regulation is contrary to law.

To be sure, a finding that West's claim for compensatory damages is preempted by the ADA would obviate 14 C.F.R. § 250.9(b)(3)'s effect, at least as it applies to most *state* actions. However, we can only look to the

agency regulations for guidance if there remains some ambiguity after *Morales.*

I do not believe *Morales* leaves room to doubt whether West's claim "relates to" airline services, and I respectfully dissent.