ARTHUR JOHNSON, Indiv. and on Behalf of All Persons Similarly Situated, Plaintiff-Appellant, v. AMERICAN AIRLINES, INC., Defendant-Appellee.—BERNARD BASKIN et al., Indiv. and on Behalf of All Persons Similarly Situated, Plaintiffs-Appellants, v. UNITED AIRLINES, INC., Defendant-Appellee.

First District (5th Division)  Nos. 1—93—1156, 1—93—1214 cons.

Opinion filed April 22, 1994.—Rehearing denied May 26, 1994.

Jerome E. Boyle, of Alvin W. Block & Associates, of Chicago, for appellant Arthur Johnson.

Edward A. Cohen and Jerome E. Boyle, both of Alvin W. Block & Associates, of Chicago, for appellants Bernard Baskin and Marilyn Baskin.

Russel M. Pelton and David C. Bohrer, both of Oppenheimer, Wolff & Donnelly, of Chicago, for appellee American Airlines, Inc.

Douglas C. Tibble and Christine M. Drylie, both of McDermott, Will & Emery, of Chicago, for appellee United Airlines, Inc.

JUSTICE McNULTY delivered the opinion of the court:

Plaintiff Arthur Johnson appeals from the entry of summary judgment on his class action breach of contract suit against defendant American Airlines, Inc. (American). Plaintiffs Bernard Baskin and Marilyn Baskin appeal the dismissal of their class action breach of contract claim against defendant United Airlines, Inc. (United). These appeals were consolidated.

Plaintiff Johnson called an American Airlines ticket agent and purchased a reduced fare ticket for $158, comprised of $146.30 for airline transportation and $11.70 for Federal transportation tax. Johnson claims that the American ticket agent told him that the

penalty for cancelling the ticket was 25% of the fare. When Johnson cancelled the ticket, he was assessed a penalty of 25% of the total ticket price.

Johnson brought this class action suit claiming that American breached its oral contract by charging him a penalty of 25% of the total ticket price, rather than only the cost for transportation. Johnson claims he was therefore overcharged $3.14. The trial court granted defendant's motion for summary judgment on the basis that Johnson's claim relates to rates and services and is thus preempted under section 1305(a)(1) of the Airline Deregulation Act (ADA). (49 U.S.C. app. § 1305(a)(1) (1988).) This appeal followed.

The Baskins purchased two reduced fare tickets on United Airlines for $516 each, which were comprised of $477.76 for air transportation and $38.24 for Federal transportation tax. The tickets were subject to a 25% penalty for cancellation. When the Baskins cancelled their tickets, they were assessed a penalty of 25% of the total ticket price for each ticket. The Baskins brought a class action suit claiming that United breached its contract when it retained $9.56 for each ticket by improperly calculating the 25% penalty on the total fare, rather than solely on the air transportation portion of the fare. The trial court granted defendant's motion to dismiss, finding that plaintiffs' claim related to rates and was preempted under section 1305(a)(1) of the ADA. The Baskins appealed and their appeal was consolidated with Johnson's appeal since both cases involve the issue of whether plaintiffs' breach of contract actions were preempted by section 1305(a)(1) of the ADA.

Section 1305(a)(1) of the ADA provides, in pertinent part:

"[N]o State or political subdivision thereof *** shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ***." (49 U.S.C. § 1305(a)(1) (1988).)

In *Morales v. Trans World Airlines, Inc.* (1992), 504 U.S. 374, 383, 119 L. Ed. 2d 157, 167, 112 S. Ct. 2031, 2037, quoting Black's Law Dictionary 1158 (5th ed. 1979), the Supreme Court noted that the ordinary meaning of the words "relating to" is a broad one, that is, " 'to stand in some relation; to have bearing or concern; to pertain; refer; to bring into association with or connection with.' " The Court compared the language in section 1305 to a similarly worded preemption provision in the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1144(a) (1988)), which preempts State laws that "relate to any employee benefit plan." The Court adopted the same liberal construction applied in ERISA cases and held that State enforcement actions having a "connection with or

reference to airline 'rates, routes, or services' are pre-empted under 49 U.S.C. app. § 1305(a)(1)." *Morales*, 504 U.S. at 384, 119 L. Ed. 2d at 167-68, 112 S. Ct. at 2037.

Applying this test, the *Morales* Court determined that State regulation of allegedly deceptive airline fare advertisements related to rates and was therefore preempted by section 1305(a)(1). Despite this ruling, the Court explained that not all State claims are preempted by section 1305(a)(1) and that State laws against gambling and prostitution as applied to airlines are not preempted. The Court also declined to address whether State regulation of the nonprice aspects of fare advertising, such as State laws preventing obscene depictions, would similarly relate to rates. The Court noted that some State actions may affect airline fares in too tenuous, remote, or peripheral a manner to have preemptive effect. The *Morales* Court found that the fare guidelines at issue there did not present a borderline question, and therefore expressed no opinion as to "where it would be appropriate to draw the line" regarding the types of actions that would be preempted by section 1305(a)(1). (*Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040.) Lastly, the court stated that its decision did not "give the airlines *carte blanche* to lie and deceive consumers; the [Department of Transportation] retains the power to prohibit advertisements which in its opinion do not further competitive pricing." *Morales*, 504 U.S. at 390, 119 L. Ed. 2d at 172, 112 S. Ct. at 2040; see 49 U.S.C. app. § 1381 (1988).

The facts in the instant case present an even more compelling basis for preemption than did the facts addressed by the Court in *Morales*. In *Morales* the preempted State law claims concerned, among other things, advertising of limitations on refunds. Here, the State law claims attack not merely the advertising on limitations on refunds, but the limitations themselves.

In *Statland v. American Airlines* (7th Cir. 1993), 998 F.2d 539, the Seventh Circuit decided a case with facts virtually identical to those presented here. The plaintiff in *Statland* bought an airline ticket carrying a 10% cancellation penalty. When plaintiff canceled the ticket, American Airlines kept 10% of the Federal tax plaintiff had paid, in addition to 10% of the ticket price. Plaintiff filed a class action suit which contained State law claims alleging breach of fiduciary duty, violation of the Consumer Fraud Act, conversion and breach of contract, based on the airline's retention of 10% of the Federal tax. The court found it "obvious that cancelled ticket refunds relate to rates" and that under *Morales* and section 1305(a), plaintiff's claims were preempted since States cannot regulate American's refund practices either by common law or by statute.

Similarly, in *Vail v. Pan Am Corp.* (1992), 260 N.J. Super. 292, 616 A.2d 523, plaintiffs brought an action alleging fraud or consumer fraud, and breach of contract, claiming that the airlines falsely advertised that they were initiating an enhanced security program, then charged $5 per ticket to defray the costs of the program when in fact the airline did not provide such a program. The court noted that if plaintiff's State claims were allowed, this would result in multiple and potentially conflicting standards controlling airline advertising, services and rates. The court therefore determined that under the broad interpretation given to section 1305 by *Morales*, plaintiff's claims challenged rates and services and were preempted.

Based on the *Morales* Court's broad interpretation of the term "rates," and the manner in which *Statland* and *Vail* have interpreted *Morales*, we are thoroughly convinced that plaintiffs' claims relate to rates. Although plaintiffs claim that if we find preemption here, then all State claims will be preempted, a similar argument was made and rejected in *Morales*. The plaintiffs' claims do not require us to address a borderline preemption question. Rather, the State law claims here clearly relate to the rates charged by airlines for reduced fare tickets. Furthermore, to allow plaintiffs to bring these State law claims would create exactly the type of rate inconsistency among States which Congress intended to prohibit by enacting the Federal preemption language of section 1305(a)(1).

Recently, in *Wolens v. American Airlines, Inc.* (1993), 157 Ill. 2d 466, the Illinois Supreme Court considered whether plaintiffs' suit alleging breach of contract and violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1987, ch. 121$^1$/$_2$, par. 261 *et seq.*), based on American's retroactive modification of its frequent flyer program, was preempted by section 1305(a)(1). The court in *Wolens* found that plaintiffs' suit did not relate to rates, routes, or services of an airline since a frequent flyer program is not an essential element to the operation of the airline.

On April 4, 1994, the United States Supreme Court granted *certiorari* of *Wolens*. (*Wolens v. American Airlines Inc.* (U.S. April 4, 1994), No. 93—1286.) Regardless of whether the Supreme Court finds that *Wolens* has been correctly decided, that decision would have no effect on the instant case, since the issue here is more closely connected to rates.

Lastly, we note that our decision does not leave plaintiffs without a remedy. If plaintiffs wish to pursue their claims, they may file a claim with the Department of Transportation, which has been specifically designated by Congress to administer and enforce consumer protection law. 49 U.S.C. app. § 1381 (1988); see *Statland v. American Airlines, Inc.*, 998 F.2d at 542.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURRAY, P.J., and COUSINS, J., concur.