Azubuko **CHUKWU**

v.

**BOARD OF DIRECTORS VARIG AIRLINE.**

Civil A. No. 93–12829–WGY.

United States District Court, D. Massachusetts.

March 13, 1995.

Order Reaffirming Decision on Reconsideration April 21, 1995.

---

Azubuko Chukwu, pro se.

John J. Davis, Bernadette D. Sewell, Morrison, Mahoney & Miller, Boston, MA, for Bd. of Directors Varig Airline.

*MEMORANDUM AND ORDER ON DEFENDANT, VARIG BRAZILIAN AIRLINES' MOTION FOR SUMMARY JUDGMENT (# 20, filed 8/25/94)*

COLLINGS, United States Magistrate Judge.

Construing the *pro se* Complaint liberally, it can be said to state a breach of contract claim for compensatory damages on account of the defendant's alleged failure to transport plaintiff's brother from Nigeria to Grand Cayman via Miami pursuant to a ticket which the plaintiff purchased for his brother. Taking the facts in the light most favorable to the plaintiff, the defendant did in fact refuse to allow plaintiff's brother on the plane even though he had a valid ticket purchased by plaintiff. Plaintiff alleges that the defendant's refusal to board his brother was based on an erroneous understanding that the brother could not land in Miami because he did not have a visa, even though his stopover in Miami was less than eight hours. Plaintiff claims no visa is necessary if the stopover is less than eight hours.

The defendant refunded the full amount of the ticket to the plaintiff; however, plaintiff claims three and one-half million dollars in damages due to an alleged loss of a business opportunity in the Cayman Islands as a result of his brother being prevented from making the trip on the date for which the ticket was issued.

Defendant has filed a motion for summary judgment claiming that plaintiff's claims are preempted by the Airline Deregulation Act (hereinafter ADA), 49 U.S.C. § 1305 (1994), by which Congress amended the Federal Aviation Act (hereinafter FAA) in 1978. Section 1305(a)(1) provides that "no State ... shall enact or enforce any law, rule, regulation, standard or other provision having the force and effect of law relating to rates, routes, or services of any air carrier ..." [1]

While the law as to what claims are and are not preempted by that section has been less than clear, the recent Supreme Court case of *American Airlines, Inc. v. Wolens,*

1. The Federal Aviation Act cited by the defendant was recently repealed, revised, and recodified in July 1994, prior to the date of filing of this motion. Congress enacted 49 U.S.C. § 40101, *et seq.* (1995), which replaced the earlier version without substantive change. The new Law includes section 41713 entitled "Preemption of authority over prices, routes, and services," intended to replace section 1305. The revised section contains only a few minor changes in the language, but the substance is left intact. Section 41713(b)(1) in part provides: "a State ... may not enact or enforce a law ... having the force and effect of law related to a price, route, service of an air carrier ..." This is substantially the same as the old section 1305 cited by the defendant. The legislative history indicates that the "purpose of [the revision] is to restate in comprehensive form, without substantive change, certain general and permanent laws related to transportation and ... to make other technical improvements in the Code." H.R.Rep. No. 180, 103rd Cong., 2nd Sess. 1 (1993) *reprinted in* 1994 U.S.Code Cong. and Admin.News at 818.

—— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) is instructive. In that case, plaintiffs who were enrolled in the American Airlines' frequent flyer program sued the airline for breach of contract for unilaterally changing the rules of the program after the plaintiffs had accumulated a certain number of miles. The changes meant that the plaintiffs would have to earn more miles to obtain rewards promised under the program.

The Supreme Court held that in deciding preemption issues under the ADA, lower courts should look not only to the clause "relating to rates, routes, or services" language of the statute but also to the clause that contains the language that "no state shall enact or enforce any law." *American Airlines,* —— U.S. at ——, 115 S.Ct. at 824. The Court wrote:

> We do not read the ADA's preemption clause ... to shelter airlines from suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings.... [T]erms and conditions airlines offer and passengers accept are privately ordered obligations "and thus do not amount to a State's 'enact[ment] or enforce[ment] [of] any law, rule, regulation, standard, or other provision having the force and effect of law' within the meaning of [§]1305(a)(1)."

*Id.* (citations and footnote omitted). The Court found support for its interpretation in other provisions of the FAA and Department of Transportation's (DOT) regulations promulgated under it.

> The FAA's text, we note, presupposes the vitality of contracts governing transportation by air carriers. Section 411(b), 49 U.S.C.App. § 1381(b), thus authorizes airlines to "incorporate by reference in any ticket or other written instrument any of the terms of the contract of carriage" to the extent authorized by the DOT. And the DOT's regulations contemplate that, upon the January 1, 1983, termination of domestic tariffs, "ticket contracts" ordinarily would be enforceable under "the contract law of the States." 47 Fed.Reg.

52129 (1982). Correspondingly, the DOT requires carriers to give passengers written notice of the time period within which they may "bring an action against the carrier for its acts." 14 CFR § 253.5(b)(2) (1994).

*American Airlines,* —— U.S. at ——, 115 S.Ct. at 825.

Lastly, the Court wrote:

> The conclusion that the ADA permits state-law-based court adjudication of routine breach of contract claims also makes sense of Congress' retention of the FAA's saving clause, § 1106, 49 U.S.C.App. § 1506 (preserving "the remedies now existing at common law or by statute."). The ADA's preemption clause, § 1305(a)(1), read together with the FAA's saving clause, stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated. This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach of contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement.

*American Airlines,* —— U.S. at ——, 115 S.Ct. at 826 (footnote omitted).

In so holding, the Court distinguished its earlier holding in *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 381–83, 112 S.Ct. 2031, 2036, 119 L.Ed.2d 157 (1992). In that case, the issue was whether the ADA "preempt[ed] the States from prohibiting allegedly deceptive airline fare advertisements through enforcement of their general consumer protection statutes." *Id.* at 378, 112 S.Ct. at 2034. Several states had attempted to use these statutes to require airlines to adhere to specific "Travel Industry Enforcement Guidelines" composed by the National Association of Attorneys General. *Id.* at 378–81, 112 S.Ct. at 2034–35. Justice Scalia gave a very broad construction to the meaning of the words in § 1305.[2] He wrote that

---

2. Justice Scalia emphasized the identical language used in another federal statute, Employee

Retirement Income Security Act, 29 U.S.C. § 1144(a), and its construction and interpreta-

"[t]he ordinary meaning of these words is a broad one ... and the words thus express a broad pre-emptive purpose." *Morales,* 504 U.S. at 383, 112 S.Ct. at 2037. However, the Court stated that the primary operating principle of the preemption provision was economic so that any law having a "significant effect" on airline rates, routes, or services is forbidden. *Id.* at 385–86, 112 S.Ct. at 2037–38. The Court concluded that the fare advertising provisions were preempted by the federal statute. In the *American Airlines* case, the Court stated that it was adhering to its holding in *Morales. American Airlines,* —— U.S. at ——, 115 S.Ct. at 827. But the Court clearly considered the States' enforcement of the Travel Industry Enforcement Guidelines as the attempt to enforce a state policy over and above any contract the airlines had with their passengers. As such, it was preempted.

The result in the *American Airlines* decision was somewhat foreshadowed by the Ninth Circuit's decision in *West v. Northwest Airlines, Inc.,* 995 F.2d 148 (9 Cir., 1993). An earlier judgment of the Ninth Circuit in favor of the plaintiff, reported at 923 F.2d 657 (9 Cir., 1990), had been vacated by the Supreme Court for further consideration in light of the *Morales* decision. 504 U.S. 968, 112 S.Ct. 2932, 119 L.Ed.2d 558, —— U.S. ——, 112 S.Ct. 2986, 120 L.Ed.2d 864 (1992). West had been bumped from a flight because of overbooking. The Ninth Circuit, after reviewing the statute and regulations, found that West's breach of contract claim was not preempted but that his claim for punitive damages was. *West,* 995 F.2d at 152.

Cases decided by district courts in the First Circuit after the *Morales* decision but before the *American Airlines* decision reach different results on the preemption question. In one case from the District of New Hampshire[3], the court decided that a tort claim against an airline alleging personal injury is not preempted by the provision.

The case of *Cannava v. USAir, Inc.,* No. 91–30003–F, 1993 WL 565341 (D.Mass., Jan. 7, 1993) was decided by then Magistrate Judge Ponsor.[4] Cannava and his family were traveling from Washington, D.C. to Hartford after having attended the funeral of family member. He alleged that at the check-in counter in Washington's National Airport, a ticket agent grabbed his ticket and refused to allow him to use a discount fare for aggrieved family members. Thus he was required to purchase another ticket at a substantially higher price which he believed was for first class seating. Once on board however, he was not given first class accommodations and was separated from the rest of his family in the cabin. Subsequently, he brought this action setting forth common law claims for intentional infliction of emotional distress, negligence, and breach of contract as well as a statutory claim for unfair and deceptive practices.

Judge Ponsor dismissed the claims, holding that all of the counts were preempted by § 1305. In his analysis, Judge Ponsor, relying on the ordinary meaning of the statutory language and on "case law and common sense," *Id.* at *6, concluded that the defendant's employees' actions "related to" airline services rendered by USAir. He wrote:

> These actions [by the airline] constitute 'services'—poor services, to be sure—performed while attempting to process plaintiff's ticket. They fall within the species of behavior as to which, court (sic) have consistently found, lawsuits are preempted.

*Cannava,* 1993 WL 565341 at *6.

Although the defendant in the instant case cites *Cannava* in support of its preemption argument, it seems clear that, at least as to the breach of contract claim, the result in *Cannava* would have been different if *American Airlines* had been precedent at the time of Judge Ponsor's decision. The breach of contract claim did not involve anything other than an attempt to enforce a private bargain between Cannava and USAir respecting the

tion by the courts to advance his argument. *Id.* at 385–86, 112 S.Ct. at 2037–38.

**3.** *Dudley v. Business Express, Inc.,* 1994 WL 558680 (D.N.H., Oct. 11, 1994).

**4.** Judge Ponsor has since been appointed and sworn in as a United States District Judge.

airlines policy regarding travel by aggrieved family members.

In another case, *Doricent v. American Airlines, Inc.*, No. 91–12084–Y, 1993 WL 437670 (D.Mass., Oct. 19, 1993), Judge Young found that claims for intentional infliction of emotional distress and assault and battery were not preempted. However, that case did not involve a claim for breach of contract. The facts were that Doricent, a United States citizen, was a passenger on an American Airlines flight scheduled to fly from Haiti to New York. Once on board, the defendant's employees allegedly harassed, physically and verbally abused Doricent and attempted to eject him from the airplane. After he was identified as an American citizen, he was allowed to remain on board and completed his flight.

In finding no preemption, Judge Young decided that "§ 1305 would not necessarily preempt all state action which might have an effect—however indirect—on airline rates, routes, and services." *Doricent,* 1993 WL 437670 at *4. Moreover, the court reasoned that the Supreme Court in *Morales* used the "significant impact" analysis to define the scope of "relating to," thus "limit[ing] the potential sweep of the latter phrase at least to those classes of cases which have some measurable economic effect on the rates, routes, and services of the airline industry as a whole." *Id.,* 1993 WL 437670 at *4. Therefore, the court held that if a State based cause of action fails the "significant impact" test by not demonstrating some "measurable economic effect," it should not be preempted. *Id.,* 1993 WL 437670 at *5.

In applying the above analysis in *Doricent,* Judge Young held that:

> Racial discrimination, the intentional infliction of emotional distress, and assault and battery have nothing whatsoever to do with any legitimate or quasi-legitimate industry-wide practice of affording airline service. Imposing liability for such conduct under Massachusetts law is not shown to in any way "significantly impact" an airline's ability to administer services, or set rates and routes. In addition, this Court has no evidence before it that recognition of Doricent's claims will frustrate in

any way the purpose of the Airline Deregulation Act to promote "competitive market forces." *See Morales,* 504 U.S. at 378, 112 S.Ct. at 2034 (quoting 49 U.S.C. §§ 1302[a][4], 1302[a][9] ).

*Doricent,* 1993 WL 437670 at *5.

Judge Young also criticized the *Cannava* decision for putting too much emphasis on analyzing the part of the statute concerning the "services" and ignoring the "relating to" language of the Statute. *Id.,* 1993 WL 437670 at *5, n. 3.

■ At the end, the *American Airlines* decision dictates the ruling on defendant's motion for summary judgment in the instant case. The plaintiff is seeking to enforce a private agreement for transportation of his brother by air which he made with the defendant. The case does not involve any " . . . enlargement or enhancement based on state laws or policies external to the agreement." *American Airlines,* —— U.S. at ——, 115 S.Ct. at 826. His breach of contract claim is not preempted.

Accordingly, it is ORDERED that Defendant, Varig Brazilian Airlines' Motion for Summary Judgment (# 20) be, and the same hereby is, DENIED.

*MEMORANDUM AND ORDER ON DEFENDANT VARIG AIRLINES' MOTION FOR RECONSIDERATION (# 26)*

It is ORDERED that Defendant's Motion for Reconsideration (# 26) be, and the same hereby is, DENIED. It continues to be my opinion that this case, which involves an alleged breach of contract, is governed by the Supreme Court's decision in *American Airlines, Inc. v. Wolens,* —— U.S. ——, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995) and such earlier cases as *West v. Northwest Airlines, Inc.,* 995 F.2d 148 (9 Cir.,1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1053, 127 L.Ed.2d 374 (1994). *See also Salley v. Trans World Airlines, Inc.,* 723 F.Supp. 1164 (E.D.La.,1989).

The case of *O'Carroll v. American Airlines, Inc.,* 863 F.2d 11 (5 Cir.), *cert. denied sub nom. O'Carroll v. Chaparral Airlines, Inc.,* 490 U.S. 1106, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989), cited by the defendant, is plainly distinguishable. In that case,

plaintiff brought an action asserting various state law claims based on wrongful exclusion from the flight. The plaintiff held a valid ticket for a flight which comprised of several stopovers. After boarding on the last leg of the journey, the plaintiff and a companion, who were both intoxicated, became loud and boisterous. *O'Carroll*, 863 F.2d at 12. A flight attendant asked O'Carroll to deplane and, upon his refusal, he was subsequently removed from the airplane by the authorities. *Id.*

The Fifth Circuit held that the claims were preempted by the preemption provision of the Airline Deregulation Act, 49 U.S.C. § 1305 (1994) (hereinafter, "ADA") because section 1511 of the same Act "vests an air carrier with broad discretion with respect to whom will be granted or denied passage." *Id.* Section 1511(a) in part provides that "any air carrier may also refuse transportation of a passenger or property when, in the opinion of the carrier, such transportation would or might be inimical to *safety of flight.*" (emphasis added).[1] In its analysis, the Fifth Circuit relied almost exclusively on this provision since the decision to refuse to transport was clearly safety related, i.e., the airline refused to transport a potentially dangerous passenger. In contrast, there is absolutely no claim in the instant case that the refusal to transport plaintiff's brother was based on safety concerns. On its face, the decision in *O'Carroll* is inapposite.

The facts in the instant case are more analogous to the situations when a passenger is "bumped" from a flight by reason of overbooking or oversales, or there is a refusal to transport unrelated to safety concerns. In such situations, a breach of contract claim is not preempted. *West*, 995 F.2d at 151; *Salley*, 723 F.Supp. at 1166. In fact, the court in the *Salley* case specifically distinguished the *O'Carroll* case on the ground that the refusal to board the plaintiff in that case was not based to any degree on the fact ". . . that such transportation 'might be inimical to safety of flight.'" *Salley*, 723 F.Supp. at 1166.

However, counsel for the defendant in the instant case argues that the *O'Carroll* case, as recently revisited in two companion cases from the Fifth Circuit Court of Appeals after the Supreme Court decided the *American Airlines* case, supports the position that the plaintiff's claims are preempted. In *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5 Cir., 1995), the plaintiff was injured during a flight and brought suit for negligent operation of the aircraft to recover for her physical injuries and medical expenses. The court held that the plaintiff's claims for personal injury was not preempted by section 1305 of the ADA. The companion case is *Smith v. America West Airlines, Inc.*, 44 F.3d 344 (5 Cir., 1995). *Smith* involved passengers who sued the airline when their flight was hijacked, claiming that the defendant airline was negligent in permitting the hijacker to board the aircraft. *Id.* at 345. The Fifth Circuit held that the plaintiffs' claims were not preempted by section 1305. *Id.* at 347.

As is readily apparent, both cases are distinguishable from the instant case because they involve tort claims rather than claims for breach of contract. But in discussing the issue of preemption respecting the tort claims, the court seemed to change the basis of the *O'Carroll* decision.

The *Hodges* case involved a claim of personal injury by the plaintiff, and the Fifth Circuit reiterated that some state *tort* claims are preempted by section 1305 including "the state law claims arising from the alleged wrongful exclusion." *Hodges*, 44 F.3d at 339. Referring to the *O'Carroll* case, the court did state that:

> [In *O'Carroll,*] the state law claims arising from the alleged wrongful exclusion undeniably related only to the services provided by the airline. . . . Enforcement of O'Carroll's state law claims would result in significant *de facto* regulation of the airlines' boarding practices and, moreover, would interfere with federal law granting the airlines substantial discretion to refuse to carry passengers. 49 U.S.C.App. § 1511(a).

*Hodges*, 44 F.3d at 339.

---

1. Section 1511 was recently recodified in 49 U.S.C. § 44902. That sections reads, in pertinent part: "Permissive refusal— . . . an air carri- er . . . may refuse to transport a passenger or property the carrier decided is, or might be, inimical to safety."

The citation to section 1511(a), which, as seen above, qualifies this discretion to instances in which "such transportation would or might be inimical to *safety of flight*" (emphasis added) seems to imply that the original reasoning of the *O'Carroll* case based on safety-related concerns remains viable.

However, the Fifth Circuit in *Hodges* failed to distinguish *O'Carroll* based on the safety-related concerns it had previously noted. Instead, the court chose not only to apply the broad preemptive construction offered by *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992) to the facts in *Hodges* but also further set out to reconcile this interpretation with the decision in *O'Carroll.* Under this approach, the Fifth Circuit first characterized the type of claim advanced by the plaintiffs in each case as either "relating to" or "not relating to" a "service" offered by the airline and then proceeded to apply the preemption provision to the claims which it believed were related to such services. The court then concluded that the claim in *Hodges,* contrary to the claim in *O'Carroll,* was not related to services and thus was not preempted. The corollary of course is that the claims in *O'Carroll* would be preempted because they related to a "service" offered by the airline and not because they raised safety concerns.

In *Smith,* the companion case to *Hodges,* the Fifth Circuit took the above analysis one step further. As previously noted, *Smith* involved passengers who sued the airline when their flight was hijacked, claiming that the defendant was negligent in permitting the hijacker to board the aircraft. *Smith,* 44 F.3d at 345. The court held that the plaintiffs' claims were not preempted by section 1305 and stated:

> Appellants' claims are thus preempted only if they "relate to" "services" within the scope of § 1305(a)(1). We conclude that they do not relate to preempted services and that this case is not simply the converse of *O'Carroll.* As explained in *Hodges,* § 1305(a)(1) assured the economic deregulation of the airlines by rendering them immune from rate and service regu-

lation by the states.... The Supreme Court counsels that courts should not lightly infer in federal actions an attempt to preempt traditional state police powers.

*Id.* at 346 (citation omitted).

The Fifth Circuit applied this principle to "state personal injury tort law concerning the *safety* of the airline business." *Id.* (emphasis added). However, the court went further by explicitly stating that:

> Under these circumstances, it is reasonable to interpret the "service" of boarding to be limited to economic decisions concerning boarding, e.g., overbooking or charter arrangements, and contractual decisions whether to board particular ticketed passengers.
>
> Consistent with this line of reasoning, O'Carroll's claim was preempted under § 1305(a)(1). His suit for wrongful eviction from a flight involved an alleged breach of the airline's duty to transport the plaintiff. If O'Carroll's judgment had remained intact, it would interfere with the economic deregulation of airline services by imposing a state-law-based duty to transport ticketed passengers.

*Smith,* 44 F.3d at 346–47.

While the Fifth Circuit in *Smith* did hint that the issue of safety of passengers requires special treatment, in its attempt to distinguish the *Smith* fact pattern from *O'Carroll* to find no preemption for the plaintiffs in *Smith,* the Fifth Circuit again emphasized the "relating to services" part of the preemption provision instead of the safety-related concerns raised in *O'Carroll.* As such, the Fifth Circuit distinguished *O'Carroll* and *Smith* based on the type of claim presented, namely that in *O'Carroll,* a *defense* of safety concerns was presented by the airline (which was preempted) whereas in *Smith* a "claim that the airline breached [a] safety-related tort duty" was advanced (which was not preempted). *Hodges,* 44 F.3d at 339.

This analysis, in my opinion, is not in conformity with the *American Airlines* case, at least so far as the instant case is con-

cerned.[2] As indicated in this Court's initial memorandum and order,[3] Justice Ginsberg in the *American Airlines* case specifically started her analysis by stating that:

> We need not dwell on the question whether plaintiffs' complaints state claims "relating to [air carrier] rates, routes, or services."
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> Plaintiffs' claims *relate* to "rates," ... and to "services,".... But the ADA's preemption clause contains other words in need of interpretation, specifically, the words "enact or enforce any law[.]"

*American Airlines,* — U.S. at —, 115 S.Ct. at 823 (emphasis added).

According to the above analysis, many claims that would otherwise fall within the preemption provision because they relate to "rates, routes, or services" may nevertheless not be preempted since they do not purport to enact or enforce any law. Thus, in the *American Airlines* case, the Supreme Court decided that suing on the basis of frequent flyer contracts entered into by the airlines and their passengers, even though clearly relating to rates and services, was not barred by the preemption provisions of the ADA because it was not an effort by a state to "enact or enforce any law."

In other words, the inquiry does not end after it is determined that the suit involves questions of the "services" which airlines render. Although relating to "services," a suit may not involve an effort by a state to "enact and enforce any law" and thus is not preempted. Judge Jolly made this precise point in his concurring opinion in *Hodges* stating that he did not "approve of the rationale used to decide these cases." *Hodges,* 44 F.3d at 340. He wrote:

> In my view, while these claims are unquestionably related to a service, they simply do not run afoul of the provision's prohibition of state-adopted legislation or regula-

tion, or state enforcement of legislation or regulation. In short, they are not instances of a state "imposing [its] own substantive standards with respect to rates (sic) routes, or services," which the ADA preemption provision plainly preempts ... Instead, these suits involve efforts by private individuals to obtain relief afforded by the common law tort rules of the state.

\*　　\*　　\*　　\*　　\*　　\*

I would hold ... that claims by private individuals to obtain remedies for an asserted breach of the duty of reasonable care-traditional, well-settled common law tort remedies, in short-are not preempted by the ADA preemption provision....

*Hodges,* 44 F.3d at 340–41 (citations omitted).

■ In summary, in light of the *Morales* and *American Airlines* cases, two questions must be asked in order to determine whether a claim is preempted by the ADA. First, the court must determine whether the claim raised by the particular plaintiff is one that "relates to rates, routes, and services" offered by the defendant airline. If the answer is clearly "no," the preemption doctrine should not apply. However, if the claim is related to "rates, routes, and services", then the court must apply the second prong of the test under *American Airlines.* Under this prong, the court must inquire whether its decision would amount to the "enforcement or enactment of any laws" of any state. Only if the answer to this second inquiry is in the affirmative can the court then apply the doctrine of preemption and bar the plaintiff from asserting that claim.

Where I part company with the Fifth Circuit's analysis in the *Hodges* and *Smith* cases is not with the result in those two cases. Rather, it is in the fact that the majority dealt only with the first inquiry but not the second, as Judge Jolly noted. The court defined the word "services" as used in section 1305(a)(1) as comprising:

---

**2.** While the discussion which follows could be applied to all claims made in which there is a question of preemption under the ADA, and perhaps should be so applied, the discussion is meant to focus on the analysis which is to be employed in determining whether the claim in the instant case, which is a claim for breach of

contract for failure to transport unrelated to safety concerns, is preempted under the ADA.

**3.** Memorandum and Order on Defendant, Varig Brazilian Airlines' Motion for Summary Judgment (March 13, 1995) at page 3.

Elements of the air carrier service bargain ... items such as ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation itself.

*Hodges,* 44 F.3d at 336; *Smith,* 44 F.3d at 346.

The court in the *Hodges* case then held that:

[F]ederal preemption of state laws, even certain common law actions "related to services" of an air carrier, does not displace state tort actions for personal physical injuries or property damage caused by the operation and maintenance of aircraft.

*Hodges,* 44 F.3d at 336.

Similarly, the court in the *Smith* case held that the negligent "boarding" of the hijacker did not relate to the "service" of boarding because, as indicated, *supra:*

[I]t is reasonable to interpret the "service" of boarding to be limited to economic decisions concerning boarding, e.g., overbooking or charter arrangements, and contractual decisions whether to board particular ticketed passengers.

*Smith,* 44 F.3d at 346–47.

Asserting that the real question was the scope of "services" that were deregulated, the court wrote that "those services include[d] boarding practices in their economic or contractual dimension but not insofar as the safety of the flight [was] concerned." *Id.* at 347. Again, Judge Jolly noted the manner in which the court's decision was inconsistent with the *American Airlines* decision, writing:

In this case, the majority modifies its interpretation of the ADA preemption provi-

sion announced today in *Hodges v. Delta Airlines* to differentiate further between the economic aspects and the safety aspects of a service. I do not think this distinction is defensible in the light of *American Airlines v. Wolens. American Airlines* determined that the term "service" in the preemption provision includes *all* services, both essential and unessential. Given that fact, it is likely that the Supreme Court would view the term "service" as encompassing claims relating to the safety as well as the economic or contractual aspects of a service.

*Smith,* 44 F.3d at 347 (citation omitted).

Because the court never asked the second question and relied almost exclusively on the manner in which it chose to define "services," it candidly admitted that under its reasoning, a claim relating to overbooking such as was presented in *West,* 995 F.2d 148, would be preempted. *Hodges,* 44 F.3d at 340.[4]

In sum, under the reasoning of the *American Airlines* case, it is not sufficient to find that the claim relates to "services"—whether they be bargained-for "services" or "economic services" as limned by the Fifth Circuit—in order to determine whether it is preempted. If the state is merely enabling a passenger to hold the airline to the bargain it made "with no enlargement or enhancement based on state laws or policies external to the agreement," there is usually no preemption. *American Airlines,* —— U.S. at ——, 115 S.Ct. at 826.[5] *Accord Shupe v. American Airlines, Inc.,* 893 S.W.2d 305, 307–08 (1995).[6] The only exception would be as in

4. Even Judge Jolly would find an "overbooking" claim preempted, writing:

[A]lthough the issue is not before us and we do not decide it today, another example of a common law claim against an airline that might be impliedly preempted is a suit alleging breach of contract for "bumping" a duly-ticketed passenger from a scheduled flight. This claim is likely preempted by the extensive regulations contained at 14 C.F.R. § 250.

*Hodges,* 44 F.3d at 342, n. 5.

What Judge Jolly fails to point out is those very regulations provide for the "bumped" passenger to sue if he or she has not accepted an offer of alternate transportation or the airline's offer of compensation. *See* 14 C.F.R. 250.9(b); *West,* 995 F.2d at 152.

5. As Justice Ginsberg noted in *American Airlines,* "[s]tates may not seek to impose their own public policies or theories of competition or regulation on the operations of an air carrier." *Id.* at ——, 115 S.Ct. at 824, n. 5. Thus, even certain suits for breach of contract that purport to impose a state's public policy may be preempted. However, plaintiff's claim in the instant case does not fall within this exception, and he seeks no remedy other than compensatory damages.

6. *See also Johnson v. American Airlines, Inc.,* 261 Ill.App.3d 622, 199 Ill.Dec. 182, 633 N.E.2d 978, *appeal denied,* 157 Ill.2d 503, 205 Ill.Dec. 165, 642 N.E.2d 1282 (1994) holding that a breach of contract claim was preempted. On February 27, 1995, the Supreme Court of the United States

the situation presented in *O'Carroll* where preemption could be implied from another specific provision of the ADA, such as 49 U.S.C. § 1151(a) giving the airlines power to refuse transportation to a passenger when "... such transportation would be inimical to safety of flight." *O'Carroll,* 863 F.2d at 12.

In conclusion, I do not find the reasoning of the Fifth Circuit in *Hodges* and *Smith* cases to be consistent with the holding of the Supreme Court in the *American Airlines* case. Furthermore, I do not agree with the interpretation which the defendant in the instant case seeks to put on the *O'Carroll* decision. Hence, I stand by my March 13th decision that plaintiff's claim in the instant case, which alleges a breach of contract for refusal to transport unrelated to safety concerns, is not preempted by the ADA.

granted a petition for certiorari, vacated the judgment, and remanded the case to the Appellate Court of Illinois, First District for further consideration in light of *American Airlines, Inc.* *v. Wolens. Johnson v. American Airlines, Inc.,* —— U.S. ——, 115 S.Ct. 1247, 131 L.Ed.2d 129 (1995).